CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE __NORTHERN__ DISTRICT OF TEXAS
### __LUBBOCK__ DIVISION

2014 SEP -2 PM 2: 47

DEPUTY CLERK ___CBf___

Form To Be Used By A Prisoner in Filing a Complaint
Under the Civil Rights Act, 42 U.S.C. § 1983
**And under TRFRA and RLUIPA  42 u.s.c 1985(3)**
And 42.u.sc. 1986

TRENT TAYLOR#01691384

Plaintiff's name and ID Number
 French Robertson Unit, 12071
3522 Abilene T.X 79601
_____

Place of Confinement

# 5-14CV0149-C

CASE NO: _____
      (Clerk will assign the number)

V.
 Marion Williams,Medical Director
 8602 pech st, lubbock T.X. 79404
_____

**JURY TRIAL DEMAND**

Request for supplemental jurisdiction

Defendant's name and address
 Rebecca Ramirez Sr.Director Psychiatric
 8602 peach st Lubbock,Tx 79404
_____
Defendant's name and address
Raye Mitchell,Director of nursing, Psychiatric
8602 peach st Lubbock Tx 79404
_____
Defendant's name and address
(DO NOT USE "ET AL.")

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE**. ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the Clerk of the United States Court for the appropriate District of Texas in the Division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. The list labeled as "VENUE LIST" is posted in your unit law library. It is a list of Texas prison units indicating the appropriate District Court, the Division and an address of the Divisional Clerks.

RECEIVED
SEP - 2 2014
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Defendants

Robert Stevens, Warden, Montford Unit, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Robert Riojas, Sergeant of Correntions Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Ricardo Cortez, Sergeant of Corrections Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Stephen Hunter, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Larry Davidson, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Correctional  Officer John Doe, Camera Operator for 9-6-13,
1800 Shift. TDCJ-ID; 8602 Peach St., Lubbock, Tx. 79404

Jennifer Mares, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Correctional Officer Jane Doe, For b-2 on 9-8-13, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Correctional Officer Unidentifiable Young, For b-2 on 9-9-13,
TDCJ-ID; 8602 Peach St., Lubbock, Tx. 79404

Maria Reyna, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Escorting Correctional Officer John Doe#1, For 9-11-13 0600 Shift
TDCJ-ID; 8602 Peach St., Lubbock, Tx. 79404

Escorting Correctional Officer John Doe#2, For 9-11-13 0600 Shift
TDCJ-ID; 8602 Peach St., Lubbock, Tx. 79404

Shane Swaney, Sergeant Of Corrections Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Ermma Parra, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Chevis Parker, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Franco Ortiz, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Correctional Officer Unidentifiable Martinez, For d-2 on 9-12-13
1800 Shift, TDCJ-ID; 8602 Peach St., Lubbock, Tx. 79404

Creastor Henderson, L.V.N
8602 Peach St., Lubbock, Tx. 79404

1-A

Defendants Continued...

Raymundo Montez, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Correctional Officer John Doe#3, On 9-12-13 video, TDCJ-ID
8602 Peach St., Lubbock, Tx.79404

Tyronne Jones, Sergeant of Corrections Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Stephanie Orr, L.V.N
8602 Peach St., Lubbock, Tx. 79404

Susan Nash, L.V.N.
8602 Peach St., Lubbock, Tx. 79404

Debra Fielder, R.N.
8602 Peach St., Lubbock, Tx. 79404

Shauna Carpenter, R.N.
8602 Peach St., Lubbock, Tx. 79404

Darla Hubble, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Tricina Gipson, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Correctional Officer John Doe#6, For e-3 on 10-14-13, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Randy Hancock, Sergeant of Corrections Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Robert Crain, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Michael Mcdonald, Psychiatrist/P.A.
8602 Peach St., Lubbock, Tx. 79404

Shawn Vallance, Sergeant of Corrections Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Melissa Olmstead, Correctional Officer, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Mail Room Administration Officer/Supervisor for 10-14-13, TDCJ-ID
8602 Peach St., Lubbock, Tx. 79404

Defendants continued

Opal Mankins,R.N.
8602 Peach,Tt. Lubbock,Tx. 79404

Allan Hanretta M.D
8602 Peach St,Lubbock Tx.79404

Janis Woodall,L.C.S.W
8602 Peach St. lubbock Tx. 79404

Kim Davis L.V.N
8602 Peach St,Lubbock Tx. 79404

Sean Odonnel,P.H.D
8602 Peach St. Lubbock Tx.79404

Marilyn Noble, P.a.
8602 peach St,Lubbock Tx,79404

Priya Khandheria,M.D
8602 Peach St, Lubbock tx,79404

Unknown Signee John DOe,Tdcj-ID
8602 Peach st.Lubbock Tx,79404

Lanette Linthicum,MD Director health services TDCJ-ID,
2 Financial Plaza. Ste.625. Huntsville Tx. 77340-3558

Denise Deshields,M.D. Medical DirectorTTUHSC
2 Financial Plaza ste. 625. Huntsville Tx. 77340-3558

ALL DEFENDANTS LISTED IN THE ABOVE  REFERENCES ARE LISTED IN THEIR OFFICIAL
AND INDIVIDUAL CAPACITIES.AT ALL TIMES LISTE DEACH DEFENDANT ACTED UNDER COLOR
OF STATE LAW.

JURISDICTION & VENUE

1).This is a civil action authorized by 42 U.S.C §1983 to redress the depriv-
ation,under color of state law,of rights secured by the constitution of the
United States.The court has jurisdiction under 28U.S.C. §1331  and 1343 (a) (1)
1343(a)(2),and 1343(a)(3).Plaintiff Taylor's claims for relief for injunction
are authorized by 28 U.S.C section 2283 and 2284 and ruyle 65 of the federal
rules of civil procedure.Plaintiff Taylor seeks declaratory relief pursuant
to 28U.S.C section 2201 and 2202.

2).The northern district of Texas,Lubbock division is an appropriate venue
under 28 U.S.C section 1391(b)(2) because it is where the events giving rise
to the claim occured.

3).The court has supplemental jurisdiction over the plaintiffs state Tort law
claims under 28U.S.C. section 1367.

4). This is also a civil action authorized by 42 U.S.C Section
1985(3) and 42 U.S.C Section 1986 to redress the Conspirators
Deprivation of rights Secured by the Constitution of the United
States.

**FILING FEE AND IN FORMA PAUPERIS**

1. In order for your complaint to be filed, it must be accompanied by the filing fee of **$350.00**.

2. If you do not have the necessary funds to pay the filing fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis* (IFP), setting forth the information to establish your inability to prepay the fees and costs or give security therefore. You must also include a six (6) month history of your Inmate Trust Account. You can acquire the application to proceed IFP and appropriate Inmate Account Certificate from the law library at your prison unit.

3. 28 U.S.C. 1915, as amended by the Prison Litigation Reform Act of 1995 (PLRA), provides, "…if a prisoner brings a civil action or files and appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." Thus, the Court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the Court will apply 28 U.S.C. 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your Inmate Account, until the entire **$350** filing fee has been paid.

4. If you intend to seek *in forma pauperis* status, then do not send your complaint without an Application to Proceed IFP, and the Certificate of Inmate Trust Account. Complete all the essential paperwork before submitting it to the Court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the Court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motions(s) for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedures.

**I.   PREVIOUS LAWSUITS:**

   A. Have you filed any other lawsuits in the state or federal court relating to imprisonment?      _____ YES   **X**   NO

   B. If your answer to "A" is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

      1. Approximate date of filing lawsuit: \_\_\_\_**N/a**_____

      2. Parties to previous lawsuit:
         Plaintiff(s): _____**N/A**_____

         Defendant(s): _____**N/A**_____

      3. Court (If federal, name the district; if state, name the county) \_\_\_\_**N/A**_____

      4. Docket Number: _____**N/a**_____

      5. Name of judge to whom case was assigned: \_\_\_\_**N/A**_____

      6. Disposition: (Was the case dismissed, appealed, still pending?)
                                  **N/A**

      7. Approximate date of disposition: \_\_\_\_**N/A**_____

**II. PLACE OF PRESENT CONFINEMENT:** French Robertson Unit Abilene Tx.

**III. EXHAUSTION OF GRIEVANCE PROCEDURES:**

Have you exhausted both steps of the grievance procedure in this institution? __x__ YES ___ NO

Attach a copy of the Step 2 grievance with the response supplied by the prison system.

**IV. PARTIES TO THE SUIT:**

A. Name of address of plaintiff: Trent Taylor #01691384  French Robertson Unit
   12071 F.M.3522 Abilene, Tx. 79601

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: Marion Williams Medical Director, John Montford UNit

8602 peach st Lubbock, Tx. 79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

Acts in addition to #1,#2,#3,#6,#7,#12,#13,#20,#22

Defendant #2: Rebecca Ramirez Sr.Director Psychiatric, John Montford Unit

8602 peach st Lubbock Tx. 79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

Acts in addition to #1,#2,#3,¢,#6,#7,#12,#13,@20,#22

Defendant #3: Raye Mitchell,Director of nursing psychiatric,John MOntford

Unit 8602 peach st Lubbock Tx. 79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

Acts in addition to #1,#2,#3,#6,#7,#12,#13,#20,#22

Defendant #4: Robert Stevens,Senior Warden  Montford TDCJ-ID

8602 peach st lubbuck Tx. 79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

Acts in addition to #1,#2,#3,#7,#12,#13,#20,#22

Defendant #5: Robert Riojas Sargent of corrections officer,Montford TDCJ-ID

8602 peach st Lubbock tx79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

Acts in addition to #3,#4,#6,#8,#9,#10,#13,#14,#16,#17,#18,#19,#20,#23,#25,#26

IV. Parties To The Siut Continues...
A). Plaintiffs(s) Plantiff Trent Taylor, is and was at all times
mentioned herein a Prisoner of the state of Texas in the Custody
of the Texas Department of Criminal Justice Institutional
Division. He is currently confined on the French Robertson Unit
TDCJ-ID located at 12071 FM 3522, Abilene, Tx. 79601.

B). Defendants Continued...(3A)-(3Ø)
#6). Ricardo Cortez, Sergeant Of Corrections Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#5,#6,#9,#10,#11,#12,#14,#20,#19,#26

#7). Stephen Hunter, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#5,#6,#9,#10,#11,#12,#19,#20,#26

#8). Larry Davidson, Correctional Officer, TDCJ-ID
8602 Peach Steet, Lubbock, Tx. 79404
Acts In Addition To: #4,#5,#6,#9,#10,#11,#12,#19,#20,#26

#9). John Doe Camera Operator, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#5,#6,#9,#10,#11,#12,#19,#20,#26

#10). Jennifer Mares, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#10,#12,#19,#20,#26

#11). Jane Doe For B-2 On 9-8-13; Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#10,#12,#19,#20,#26

#12). Unidentifiable Young For B-2 On 9-9-13,Correctional Officer
TDCJ-ID; 8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#10,#12,#19,#20,#26

#13). Maria Reyna, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#10,#12,#19,#20,#26

#14). John Doe#1, Correctional Officer, Escort For 9-11-13,
TDCJ-ID; 8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#5,#6,#10,#11,#20

#15). John Doe#2, Correctional Officer, Escort For 9-11-13.
TDCJ-ID; 8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#5,#6,#10,#11,#20

#16). Shane Swaney, Sergeant Of Corrections Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#5,#6,#10,#11,#20

#17). Ermma Parra, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#10,#12,#20

#18). Chevis Parker, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx.79404
Acts In Addition To: #4,#6,#8,#9,#10,#11,#12,#13,#14,▬▬,#18,
#19,#20,#21,#23,#25,#26

#19). Franco Ortiz, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#8,#9,#10,#11,#13,#14,#18,#19,#20,
#21,#23,#25, #26

#20). Unidentifiable Martinez For D-2 on 9-12-13 (1800),TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#8,#9,#10,#11,#13,#14,#18,#19,#20,
#21,#23,#25,#26

#21). Creastor Henderson, L.V.N.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #6,#8,#12,#20,#9,#21,#23, #25

#22). Raymundo Montez, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #5,#6,#9,#10,#11,#20,#26

#23). John Doe#3, Correctional Officer For 9-12-13 On Video,
TDCJ-ID; 8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #5,#6,#9,#10,#11,#20 ,#26

#24). Tyronne Jones, Sergeant Of Corrections Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#10,#20

#25). Stephanie Orr, L.V.N.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #12,#20,#21,#8,#23,#25, #27

#26). Susan Nash, L.V.N.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #12,#20

#27). Debra Fielder, R.N.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #12,#20

#28). Shauna Carpenter, R.N.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #8,#9,#16,#20

#29). Darla Hubble, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #12,#20

3-B

#30). Tricinia Gipson, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #8,#9,#20,#21,#23

#31). John Doe#6, Correctional Officer For E-3 On 10-14-13,
TDCJ-ID; 8602 Peach Street, Lubbock, Tx.79404
Acts In Addition To: #8,#9,#20,#21,#23

#32). Randy Hancock, Sergeant Of Corrections Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #9,#16,#20

#33). Robert Crain, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #4,#6,#9,#10,#14,#20

#34). Michael McDonald, P.A.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #3,#7,#12,#13,#6,#20,#22

#35). Shawn Vallance, Sergeant Of Corrections Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition TO: #3,#4,#6,#7,#9,#12,#13,#20,#22.#26

#36). Melissa Olmstead, Correctional Officer, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #15,#20,#21,#23,#24

#37). Mailroom Administration Officer/Supervisor For 10-14-13,
TDCJ-ID; 8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #17,#20

#38). Opal Mankins, R.N.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #3,#7,#12,#13,#20,#22

#39). Allan Hanretta, M.D.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #3,#7,#13,#20,#22

#40). Janis Woodall, L.C.S.W.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: # 3,#7,#12,#13,#20,#22

#41). Kim Davis, L.V.N.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #3,#7,#12,#13,#20,#22

#42). Sean ODonnel, P.H.D.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #3,#7,#12,#13,#20,#22

#43). Marilyn Noble, P.A.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition  To: #3,#7,#12,#13,#20,#22

#44). Priya KhanDheria, M.D.
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #3,#7,#12,#13,#20,#22

#45). Unknown Signee John Doe, TDCJ-ID
8602 Peach Street, Lubbock, Tx. 79404
Acts In Addition To: #8,#9,#10,#20,#21,#23,#25,#27

#46).Lanette LinthicumM.D. director health services TDCJ-ID
2 Financial PLaza, Ste.625, Huntsville, Tx. 77340-3558
Acts in Addition to: #1,#2,#3,#20,#22

#47).Denise Deshields M.D. Medical Director TTUHSC
2 Financial PLaza, Ste.625 Huntsville. Tx. 77340-3558
Acts in Addition to: #1,#2,#3,#20,#22

3-D

1). Defendant failed to properly train, or supervise officers and/or medical personel, which led to the violation of Plantiff Taylors rights under the First, Eightth, and Fourteenth Amendments to the United States Constitution, which led Plantiff Taylor to be caused pain, suffering, physical injury, emotional distress and a substantial denial of procedural due process that harmed his life, liberty, and or property.

2). Defendant failed to uphold signed agreement in the acceptance of the correctional managed health carepolicy manual guidelines, which signified the acceptance and agreement to provide services in accordance with policies and procedures. This failure led to Plantiff Taylors First, Eighth, and Fourteenth Amendments to the United States Constitution to be violated, causing Plantiff Taylor pain, suffering, physical injury, emotional distress, and a substantial denial of procedural due process that harmed Plantiffs life, liberty or property.

3). Defendant failed to uphold contractual agreement signed by Plaintiff, saying patient does not consent to any specific treatment and could discontinue treatment at any time. This denial led to a violation of Plantiff Taylors rights under the First, Eighth , and Fourteenth Amendments to the United States Constitution, which led Plantiff Taylor to be caused pain, suffering, physical injury, emotional distress, and a substantial denial of procedural due process that harmed Plantiffs life, liberty, and or property

4). Defendant Subjected Plantiff to fecal covered cells for days to weeks,to months, provided improper meals, subjected Plantiff to temperatures below 40 degrees F. for days to weeks, to months, refused to clean cells, or arrange to have cell cleaned, or allow Plantiff  to clean cell, or supervise inmates cleaning cells, or properly clean cells. Defendants action violated Plantiff Taylors rights under the Eighth Amendment to the United States Constitution, and is causing or has caused plantiff Taylor pain, suffering, physical injury, and emotional distress.

5). Defendant moved Plantiff to filthy cell with requisite knowledge that Plantiff was being subjected to deplorable, intolerable conditions of confinement that amounted to an un-necessary and wanton infliction of pain contrary to the contempory standards of decency for days, to weeks, to months. By failing to correct that misconduct and or encouraging the continuation of the misconduct,the defendant violating Plantiff Taylors rights under the Eighth Amendment to the United States Constitution and causing Plantiff Taylor pain, suffering, physical injury, and emotional distress.

3-E

6). Defendant was made aware of the potential for harm towards the plaintiff, but took no reasonable measures to correct that misconduct and or by encouraging the continuation of an un- necessary and wanton infliction of pain contrary to the contemporary standards of decency, was a showing of deliberate indifference to the health and safety of Plaintiff Taylor once requisite knowledge of the hazardous cell conditions were obtained. This violated plaintiff Taylors rights under the Eighth Amendment to the United States Constitution and caused Plaintiff Taylor pain, suffering, physical injury and or emotional distress.

7). Defendant forced and or compelled Plaintiff to receive treatment of psychiatric nature without holding a hearing to compel treatment and or held plaintiff against his will in violation of Plaintiff Taylors Fourteenth Amendment right to the United States Constitution. These illegal actions caused Plaintiff Taylor injury to his Fourteenth Amendment right.

8). Defendant showed great disregard to Plaintiffs health and safety by subjecting Plaintiff to a physical injury as a result of deliberate indifference towards Plaintiffs serious medical needs. These actions violated and continue to violate Plaintiff Taylors rights under the Eighth Amendment to the United States Constitution, and is causing Plaintiff Taylor pain, suffering, physical injury, and emotional distress.

9). Defendant conspired with other Defendants to deprive Plaintiff of federally established rights. Defendant and or conspired with other Defendants to deprive Plaintiff of proper medical treatment with great disregard to Plaintiffs health and safety by showing deliberate indifference to Plaintiffs serious medical, and or subjecting Plaintiff to hours of unnecessary and wanton infliction of pain, and or Defendant conspired with other Defendants to deprive Plaintiff of lifes necessities such as food, water, reasonable measures of safety,and sanitary living conditions for days, to weeks, months. Defendants actions violated and continues to violate Plaintiff Taylors rights under the Eighth Amendment to the United States Constitution, and is or has caused Plaintiff pain, suffering, physical injury, and emotional distress.

10). Defendant deprived Plaintiff of lifes necessities such as food, water, reasonable measures of safety, and sanitary living conditions for days, to weeks, to months. This is in violation of Plaintiff Taylors rights under the Eighth Amendment to the United States Constitution, and is or has caused Plaintiff Taylor pain, suffering, physical injury, and emotional distress.

11). Defendant showed deliberate indifference to Plaintiffs health
and safety by physically placing inmate in human waste ~~there~~
there for purposely subjecting Plaintiff to an unnecessary and
wanton  infliction of pain contrary to the contemporary standards
standards of decency. Defendant did this in violation of Plaintiff
Taylors rights under the Eighth Amendment to the United States
Constitution, and caused Plaintiff Taylor pain, suffering, physical
injury, and emotional distress.

12). Defendant subjected plaintiff to severe mental anguish and
humiliation by sexually harassing Plaintiff by exposing Plaintiff
to members of the opposite sex completely naked to demoralize
Plaintiff. Defendant does this through and adoptation of an unwritten
policy.Plaintiff was subjected to this sexual harassment for
days, to weeks, to months, in violation of his Eighth Amendment
rights to the United States Constitution. Defendant is or has
caused Plaintiff Taylor pain, suffering, physical injury, and
emotional distress, and violated Plaintiffs religious rights.

13). Defendant denied Plaintiff proper due process procedures
by subjecting Plaintiff to a solitary confinement type environment
with extreme demoralizing and degrading significant and atypical
type hardships. Defendant did this in violation of Plaintiff
Taylors Fifth and Fourteenth Amendments to the United States
Constitution. These illegal actions are and were causing Plaintiff
Taylor injury to his Fifth and Fourteenth Amendment rights.

14). Defendant retaliated and conspired sgainst Plaintiff for
use of the grievance procedure by denying Plantiff lifes necessities
such as food, water, reasonable measures of safety, and sanitary
living conditions for days, to weeks, to months. Defendant retaliated
and conspired against Plaintiff Taylor un-lawfully in violation
of Plaintiff Taylors rights under the First Amendment to the
United States Constitution. These illegal actions caused Plaintiff
Taylor injury to his First Amendment rights.

15). Defendant used excessive force against Plaintiff Taylor
by maliciously hitting Plaintiff Taylor in the testicles with
a tool of authority, namely a bean slot bar. Defendant did this
to sexually abuse Plaintiff Taylor by intentionally touching
either directly or through the clothing of the groin with the intent of causing
~~substantial~~ substantial risk of extreme physical pain and or protracted
and obvious disfigurement. In violation of Plaintiff Taylors
Eighth Amendment right to the United States Constitution and
is(or) has caused Plaintiff Taylor pain, suffering, physical
injury, and emotional distress.

16). Defendant conspired with other defendants to cover up an
excessive use of force in order to deprived Plaintiff of his
federally protected right to properly redress the situation from
the prison through use of the prison greivance system. Defendant
did this in violation of Plaintiff Taylors rights under the First
Amendment to the United States Constitution. These illegal actions
are causing Plaintiff Taylor injury to his First Amendment rights.

17). Defendants conspired with other defendant to deprive Plaintiff
of federally protected rights,by failing, to properly handle
Plaintiffs legal mail and allowing it to be removed and opened
outside of Plaintiffs presence. Defendant did this in violation
of Plaintiff Taylors First Amendment right to the United States
Constitution. These illegal actions are causing or has caused
Plaintiff Taylor injury to his First Amendment rights.

18). Defendant led a compaign of retalitory harassment against
Plaintiff for using federally protected rights. Defendant subjected
Plaintiff to deprivations of constitutional rights rights for
days, to weeks, to months. Defendant did this in violation of
Plaintiff Taylors First, Eighth, and Fourteenth Amendment rights
to the United States Constitution, and causing Plaintiff Taylor
pain, suffering, physical injury, and emotional distress, and
by causing injury to these rights.

19). Defendant subjected Plaintiff to a substantial risk of harm
to prolonged thirst, to a deprivation of bathroom breaks that
created a risk of particular discomfort and humiliation in violation
of Plaintiff Taylors Eighth Amendment rights to the United States
Constitution and causing Plaintiff Taylor pain. suffering, physical
injury and emotional distress.

20). Defendant acted willfully and under color of state law to
deprive Plaintiff of rights protected by the United States Constitution.

21). Defendant failed to give proper medical treatment, and or
showed great disregard to Plaintiffs serious medical needs, and
or acted through an unwritten policy to deprive Plaintiff of
proper medical and or subjected Plaintiff to hours of unnecessary
and wanton infliction of pain contrary to the contemporary standards
of decency, with no legitimate penological purpose, except in
violation of Plaintiff Taylors Eighth Amendment right to the
United States Constitution, and causing Plaintiff Taylor to pain,
suffering, physical injury, and emotional distress.

22). Defendant makes and or supports general policies that violate
Plaintiffs constitutional rights, in that defendant restricted
Plaintiffs access to general community and, or access to courts
through limitation of mail, and/or telephone privelages. Defendant
denied Plaintiff adequate diet, failed to take adequate measures
to preserve sanitation, denied Plaintiff proper items for personal
hygiene, and/or denied Plaintiff adequate opportunity for physical
exercise. Defendant did this in violation of Plaintiff Taylors
First, Fifth, Eighth, and Fourteenth Amendment rights to the
United States Constitution, and causing Plaintiff Taylor pain,
suffering, physical injury, and/or emotional distress, and/or
by causing injury to these rights.

23). Defendant showed deliberate indifference to Plaintiffs serious
medical needs in Defendants response to Plaintiffs needs and/or
by intentionally denying or delaying access to medical care or
intentionally interfering with treatment once prescribed. Defendant
did this in violation of Plaintiff Taylors Eighth, and Fourteenth
rights to the United States Constitution, and causing Plaintiff
Taylor pain, suffering, physical injury and/or emotional distress.

24).The action of the defendant in using physical force aginst the plaintiff
without need  or provocation constituted the tort of assault and battery under
the law of Texas.

25). The failure of the defendant to provide proper care violated duty of care
to the plaintiff which led to theplaintiff sustaining an injury,constitutes the
Tort of Negligence under the laws of Texas.

26).Defendants failure to provide adequate measures of care of the plaintiff
by providing adequate measures of reasonable safety,such as proper sanitary
living conditions for days to weeks to months,which has caused the plaintiff
 to be diagnosed with OCD in which the plaintiff has to recieve therapy
sessionsconstitutes the Tort of Infliction of Emotional Distress under the law
of Texas.

27).Defendants failure to provide adequate medical care which led to the plain-
tiff suffering for hoursto days,andfailure to provide foelow-up examination
and treatment once perscribed which has led to the plaintiff having problems
urinating such as plaintiff not being able to control his bladder and causes
 plaintiff to urinate on himself frequently,constitutes the Tort of Negligence
under the law of Texas.

3-I

## V.  STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who is involved. Describe how each defendant is involved. You need not give any legal argument or cite any cases of statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

#1. On 9-3-13 on the french robertson unit I had been complaining of knee pains when I went back to my cell I found a package that read Lortabs.

I had been having knee pains for years. At this time I lived on 3 row and my Knee was swollen. I was so scared of the $100 co-pay I refused the infirmary.

I took 2 of the pills , they didn't help so I took 4 more. The following morning I took 6 of them at 0800 followed by 2 more at 0930.

I ended up in the hospital for 2 days on 9-6-13 I refused all questionsin which the officials  said I was suicidal and sent me to the Montford psychiatric unit    (continued on 4-A)

## VI.  RELIEF: State briefly exactly what you want the court to do for you. Make no legal arguments. Cite not cases or statutes.

Wherefor ,plaintiff respectfully pray that this court enter judgement (refered to on page 4& 4(A)

## VII.  GENERAL BACKGROUND INFORMATION:

A.  State, in complete form, all names you have ever used or been known by including any and all aliases:

Trent Michael Taylor

B.  List all TDCJ-ID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if know to you.

TDCJ#01691384, TDCJ#01366391

## VIII.  SANCTIONS:

A.  Have you been sanctioned by any court as a result of any lawsuit you have filed? ____ YES  **x**  NO

B.  If your answer is "yes", give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1.  Court that imposed sanctions (If federal, give district and division): _____ N/A _____

2.  Case Number: _____ N/a _____

3.  Approximate date sanctions were imposed: _____ N/A _____

4.  Have the sanctions been lifted or otherwise satisfied? __x__ YES __x__ NO

STATEMENT OF CLAIM CONTINUED...

#2). On September 6th, 2013, at about 1800; I, Trent Taylor,
with strict knowledge that I could discontinue treatment at any
time did enter into a consentual agreement with the Texas Tech
medical branch correctional managed health care service. This
agreement was done by me signing a voluntary approval of admission.

#3). On September 6th, 2013, at about 2100; I entered into a
second written and signed agreement for consent/approval of admission,
in which the agreement stated;"I could discontinue treatment
at any time." This agreement was signed by clinician Joni Everett.

#4). On September 6th, 2013, at about 2300; I arrived on pod
B-2, where I was escorted to 4-row, 45 cell, by escorting officers
of corrections Larry Davidson, Stephen Hunter, Correctional Officer
John Doe camera operator #1, and Sergeant Of Corrections Officer
Ricardo Cortez. When getting up to cell B-2,45, a strong fecal
odor could be smelled emitting from the cell. At this time, the
above named officials took of my boxers, leaving me standing
in the hallway completely naked. These officers maliciously placed
me in the cell. These officers named above maliciously subjected
me to deplorable, intollerable conditions of confinement. They
subjected me to an unnecessary and wanton infliction of pain
contrary to the contemporary standards of decency. These conditions
were an atypical and significant hardship that were extremely
hazardous to my health. This was done by the aboved named officials
placing me in the fecal covered cell.

#5). On September 6th, 2013, after 2300; The above named correctional
officers refered to in paragraph #4, departed from cell B-2,45.
Upon departure, Sergeant Cortez asked one of the other officials,
" Isn't this the cell that has shit all over it?", someone then
answered, "Yes, he's going to have a long weekend." The officers
then began to laugh. These above named officials showed deliberate
indifference to my safety and health by having full knowledge
of the extreme hazardous conditions. Despite having this requisite
knowledge, they still disregarded my health and placed me in
the cell. This was an atypical and significant hardship.

#6). On September 6th, 2013, at about 2300 or after; After being
placed naked in cell B-2,45, I began inspecting the cell, in
which I found there was fecal matter everywhere in massive amounts.
There was fecal matter on the floor, ceiling, window, walls,
and packed inside the water faucet, preventing me from being
able to drink water. These conditions were so un-hygenic, I was
forced to stay on my bunk. The temperatures in this climate controlled
environment were extremely low,causing me more than just dis-
comfort, they were so low that I lay naked continuously shivering.
The cell was intolerably cold. I was forced to endure these low
temperatures with nothing but a single suicide blanket, which
I covered up with while I layed on a bare steel bunk.

#7). On September 7th, 2013, at about 10:00am; On B-2 row, at 45 bunk, I asked officer Jennifer Mares, if she could move me or get me some help because of the fecal matter. This Correctional Officer gave no response, nor any-type of acknowledgement. This correctional officer was made aware of my situation several times throughout the day, yet she failed to take any type of measures to alleviate hazard/harm, I was in.

#8). On September 8th, 2013; I asked correctional officer Jane Doe#1,"Can you please get me the help I need to get moved or get the cell cleaned?" Officer Jane Doe#1 showed deliberate indifference to my health and safety by responding,"You will get moved only on week days, so go back to sleep." Correctional officer Jane Doe#1 was personally aware of my situation, yet refused to take reasonable measures to alleviate the harm.

#9). On September 9th, 2013, at about 7:00am; On B-2 row,45 cell, I asked correctional officer Unidentifiable Young, to "please get me some water," due to me not being able to get anything to drink since coming to the montford unit. I also pointed out to the officer the fecal matter that was packed inside the water faucet. The correctional officer then responded,"You should have got up for showers, and you could have drank some water in there," she then left. This correctional officer,Unidetifiable Young, had requisit knowledge of the situation,yet refused to take proper measures to alleviate the atypical and significant hardship I was in.

#10). On September 9th, 2013, at about 1530; I was escorted to B-2 dayroom, to be evaluated by Dr. Mcdonald. During this evaluation, I told the Dr. about the fecal covered cell,in which he responded, "I am not here to discuss your living conditions, I'm worried about your mental conditions." I then continued in the evaluation, in which, I stated,"I do have some anger issues, but I am not suicidal, I also do not want to stay at montford under these types of conditions." He then stated that I either voluntarily admit myself, or he will have me involuntarily admited,in which I will be there for no less than a year. The doctor then asked me,"Where did you get your Lortabs from?" I stated,"It doesn't matter, this isn't a relevant question." Dr. Mcdonald stated, "No that is a relevant question, and we will find out where you got them." I also told the doctor I wold like to write a greivance on my living conditions, and some other things. He told me," You'll be able to write one when you get to the regular pod, but you would be wise not to make your time harder than what it needs to be."

#11). On September 9th, 2013; I entered into a third written and signed agreement with the Texas Department of Criminal Justice Mental Health Services, which strictly stated,"I am not implying that I am consenting to any specific treatment by giving my consent to be admitted to a psychiatric facility."

4-B

#12). On September 9th, 2013, at about 1800; On B-2,45 cell, I asked correctional officer,Maria Reyna, if she could please call the captain and ask to move me or have a trustee come clean my cell. She responded,"It's too late for all that." She then turned and walked away. I had explained my whole situation to her, yet she still showed deliberate indifference to my health and safety.

#13). On 9-10-2013; I had been moved to another cell, yet during my 4 day duration in B-2,45 cell, I had been subjected to deplorable/ intolerable conditions of confinement contrary to the contemporary standards of decency. I was forced to suffer through an unnecessary and wanton infliction of pain contrary to the contemporary standards of decency. During this time, I was not able to eat for fear of contamination. This was because I am not allowed to receive treys or wrappers for my food, which it physically impossible for me to hold all my food without setting it down. I was also not able to deficate during this time, either due to the unsanitary toiletry conditions. This caused me great discomfort and pain. I was also subjected to low temperatures for days without the proper materials to protect me from those low temperatures. I was also confined to my bunk for this period for fear of getting into the contamination/human waste. I had been forced to live in conditions that were extremely debasing and degrading. I had been forced to sleep in close confines with another humans waste. These above named conditions were an atypical and significant hardship, in which held no legitimate penological purpose.

#14). On 9-11-13; I was advised I would be moving. I submitted to this order. I was taken back to cell B-2,45. Upon arrival at this cell, I went in and walked back out. I pointed out the fecal matter to the escorting officers,which were Correctional Officer John Doe#1 Escort, and correctional officer John Doe#2 Escort. I was then given puzzled looks and asked,"What do you plan on doing?" I stated,"I refuse to go in there until it's cleaned up." I was then escorted back to B-2,35 cell.

#15). On 9-11-13, at about 1330; At B-2, 3 row,35 cell, Sergeant Shane Swaney came and spoke with me about me refusing to go into the fecal covered cell. I stated,"There is fecal matter everywhere in there." Sergeant Swaney responded,"Dude, this is montford, there is shit in all these cells from years of psych patients." He then went to contact sergeant of corrections officer Shawn Vallance, who is the B-2 treatment team supervisor. This call to sergeant Vallance was made concerning me refusing to go in the cell.

#16). On 9-11-13, at about 1530; Sergeant Swaney came and told me,"I contacted Sergeant Vallance and personally informed him about the crap on or in the cell." Sgt. Vallance had told him I had to go in that cell regardless. These above listed officials showed deliberate indifference to my health and safety by having personal knowledge of the situation, yet refusing to take reasonable measures to alleviate the harmful element. I stated to Sgt. Swaney that I would not go in the cell at this time. He replied,"Well you know what you got to say."(He was refering to me saying I wanted to hurt myself, in which I would be taken to a seclusion cell instead of B-2,45 cell.) At this time, I stated,"I do not want to hurt myself, but I will do whatever is neccesary to not go back into  B-2,45 cell...so for the'record', I want to hurt myself." Sgt. Swaney told me,"You are a chicken shit and you'd better never ask me for any type of help."

#17). On 9-11-13, at about 1355; I was escorted by escorting officer John Doe#1 and John Doe#2, also with Sgt. Swaney, to seclusion cell D-2,51, where Sgt. Swaney made the statement,"I hope you f***ing freeze in here!" I was then maliciously placed in this cell. [A seclusion cell is what I was placed in. It is about 10 by 10 square foot. There is no toilet, water fountain, nor bunk. There is one hole in the floor,which is a drain.•Please Refer to Exhibit (A) The air conditioner is kept on at all times while the inmate is naked. This cell is known to everybody as the cold room. This substandard cell is used to freeze out inmates in order to discourage and punish them for their mental illnesses. Inmates are required to sleep naked on the floor while in this cell. This cell is supposed to be governed by correctional managed health care policy manual I-66.3 Psychiatric Inpatient seclussion. Please refer to Exibit (B)]

#18). On 9-11-13, at about 1400 or later; On D-2,51 seclusion cell, I spoke with R.N. Vanessa Wellendorf, in which I stated," I want to discharge, I do not want to receive anymore treatment." She said,"Ok," then left.

#19). On 9-11-13, after 1400; After being placed in D-2,51 cell, I noticed the cell was in horrific, un-hygenic, conditions. The floor drain was stopped up and there was a very strong acute amonia smell emitting from the drain. I voiced this complaint to correctional officer Erma Parra, who stated,"I understand, but I am just doing my job."

#20). On 9-12-13, at about 1200; I was seen by M.D. Priya Khanderia, who issued medical orders to discontinue s.p. and seclusion. Her orders consited of,"Return inmate to regular cell,clothes, bedding, and a regular trey." At this time, this cell was no longer a safety tool,but was and had become cruel and unusual punishment. PER C.M.H.C. I-66.3 IN AN EXCERPT OF THE POLICY IT STATES:"Seclusion is not employed as a punishment or as a convienience for staff" Also, PROCEDURE #3 STATES:"Seclusion must end as soon as the discharge criteria in the admission order are met."[PLEASE REFER TO EXHIBIT(B)] These officers, left me in this cell against all rules and regulations under atypical and significant hardships strictly to punish me for refusing to go in a fecal covered cell on 9-11-13.

#21). On 9-12-13, at about 1400; Correctional officer Sinclair came cell side to write greivance #201401582, pertaining to the fecal covered cell, B-2,45.

#22). On 9-12-13, at about 1800; Correctional officer Chevis Parker came cell side to D-251, in which I asked her for a restroom break. She stated,"She would let the male officers know," she then stepped out of the seclussion area to tell officer Franco Ortiz and unidentifiable Martinez. No one ever came to let me go to the restroom. While in seclusion, I had lost all due process rights.I had to rely on the officers,under whos care I was under to allow me to go to the restroom. I had to rely on these officers to provide me with all of lifes necessities, such as food,water, safety, and also sanitary living conditions. My care-takers failed to provide me with the necessities with no legitimate penological purpose, except to punish me.

#23). On 9-12-13, at about 1900; Nurse Creastor Henderson came to do her rounds, I stated to her,"I need to use the restroom really bad." She responded,"I will let the officers know." I then told officer parker again. She did nothing but leave with the nurse. At this time I was extremely cold, it was so cold, I was constantly shivering. I tried to stay warm by curling up in a ball on the floor. I had to pee really bad, also I began having chest pains, so I began to knock on the door, trying to get some help.

#24). On 9-12-13, at about 1930; Officer Unidentifiable Martinez came and told me,"Just piss in the floor drain." I stated,"I wont do that, it's not a toilet, plus I have to sleep in here." I also told him I was having chest pains and I was having a hard time breathing in that cell due to the atrocious amonia-type smells emmiting from the drain. He stated,"I don't care, deal with it." He was deliberately indifferent to my health and safety by denying me medical attention and a restroom break once he obtained requisit knowledge of my situation.

4-E

#25). On 9-12-13, at about 1945; Correctional officer Franco
Ortiz came to the seclusion area,where I once again stated,"I
need to see a nurse, and I have to pee extremely bad." Officer
Ortiz responded,"Dude, we aint pulling you out so just use the
drain like everybody else."

#26). On 9-12-13, after 1900; Sergeant of corrections officer
Robert Riojas came to do his rounds as a supervisor and he asked
me,"Why are you banging on my door?" I stated,"I'm having chest
pains, and I got to use the restroom." I then explained my whole
situation to him about the atrocious amonia smell, and the un-
hygenic cell. Sgt. Riojas responded,"Use your floor drain to
piss in, you can see the nurse later. You aren't dead yet, so
you'll be alright." I responded,"I will not piss in my floor,
I have to sleep in here, and the floor drain is stopped up."
Sgt. Riojas responded,"Well that is all you got." I let him know
also that I had not been to the restroom in over 24 hours. He
then began to mock me by saying,"You must have a really big bladder."
I responded to Sgt. Riojas,"I am not a dog." Sgt. Riojas responded
back,"I know they get treated better, but if you behave, I will
come back in a few hours and we'll see what we can do." I responded,
"Using the restroom and seeing the nurse are rights, not privellages!"
Also, this is part of policy. PLEASE REFER TO EXHIBIT (B)PROCEDURE
V: "Patients in seclusion must have acces to daily bathing and
necessary bathroom privelages."
Sgt. Riojas then stated,"Well you better think twice next time
before you have another officer write a greivance for you on
any other officer."

#27). On 9-12-13, after 2000; I began having severe pain in my
bladder along with chest pains. The volume of urine made my bladder
so intentionally painful, urination became an involuntary function,
which was physical torture. The pain was so intense and excrutiating,
I doubled over and began peeing on myself. I tried to get it
in the drain, yet the drain was stopped up, so all it did was
mix with the raw sewage and run all over my feet. I did suffer
a physical injury as a result of all the officials listed in
paragraphs  #'s 22-26, showing deliberate indifference to my
health and safety, and by failing to provide me with adequit
care.

#28). On 9-12-13; I was subjected by the above named officials
listed in paragraphs #'s 22-26, to an intollerable, deplorable,
unnecessary and wanton infliction of pain contrary to the contemporary
standards of decency. I was subjected to stay in close confines
with human waste/raw sewage. I knew I would not be able to stand
up all night, so I got down on my hands and knees and began to
scoop the sewage away from the area of the floor I'm required
to sleep naked on. I tried to sweep it under the door, yet this
tactic worked to no avail.

#29). On 9-12-13; I had been having chest pains for around 2
hours, I aslo had not seen anybody in over an hour. I had been
banging on the door for over an hour trying to get some help.
Finally nurse Creastor Henderson came back to my cell and asked
what my problem was, and why was there a puddle in front of my
door. At that time I began crying and said,"I'm sorry, but I
peed on myself and I had no control over it. It hurt so bad that
it just came out, my chest and arm are hurting real bad too."
She stated,"I heard you banging back here for about an hour."
I then asked her,"If you heard me banging, why did it take you
a hour to come back here?" She had no answer. I had been made
to sit through chest pains for over 2 hours. I also told her
about the atrocious amonia smell and fumes causing my eyes and
throat to burn. I had been forced to stay in an atypical and
significant hardship with no penological purpose except being
shown deliberate indifference to my health and safety.

#30). On 9-12-12, between 2100 and 2200; A video camera was brought
to my cell with 3 additional officers. Correctional Officers
Raymundo Montez, John Doe#3, and sergeant of corrections officer
Robert Riojas. When they came to my door, officer Chevis Parker
stated,"Be careful, there is piss in front of his door." The
video camera was then turned on, and I was then placed in handcuffs
by officer John Doe#3 and officer Montez. I was then made to
back out of the cell, in which nurse Creastor Henderson began
her assessment of my chest pains, in which, I did receive a type
of medication for the pain.

#31). On 9-12-13; On video, Sgt. Riojas asked somebody to get
him a dry towel, he then began what he called spot drying my
cell. Yet he did not call for a chemical bio-hazard spill kit
to clean the floor in which I am required to sleep naked on.
After my assessment, I stated to Sgt. Riojas,"I begged you to
allow me to use the restroom, I am not a dog." His response was,
"I dried it up for you but we will see what we can do for you
next time."

#32). On 9-12-13; On video, correctional officers John Doe#3,
and Raymundo Montez, maliciously and with deliberate indifference
to my health and safety by forcing me in to the cell down on
my knees in the sewage. I tried to scoot as far left as possible
to avoid the sewage, this was done to no avail. These officers
did this to maliciously because they did not require me to be
taken out of the cell on my knees, plus I was still mechanically
restrained. They forced me in the sewage with the sole purpose
of satisfying their malicious and sadistic whims.

#33). On 9-13-13; Officer Franco Ortiz came sometime after 0200,
and I explained to him that I was extremely cold and that my
blanket was wet with sewage and due to the pertinant fact that
the air conditioner was blowing full blast while I layed naked
in sewage on the floor. Officer Ortiz stated,"Deal with it."
I was forced to sleep in the sewage all night with no legitimate
penological purpose, this was an atypical and significant hardship.

4-G

#34).On 9-13-13 at 0600 or about correctional officer Monica
McCraw came in at shift change and placed me in the shower to
wash off the sewage.She then placed me back in my cell.The drain
began to over flow again at which time officer Mccraw contacted
maintenance and the floor supervisor.

#35). On 9-13-13 at about  1000 sargent of corrections officers
Randy Whitten arrived and began commenting on the atrocious amonia
smell.He began coughing,and stated"I know you have it on you
but wrap your blanket around you untill i  get you in the shower"
I was then  placed in D2 2row shower for 4 hours.

#36) On 9-13-13 at about 1300: maintenance shut down the cell
due to thew flooding and contamination they did this by red tagging
the cell.

#37) On 9-13-13 at about 1400;I was escorted from d2 2 row shower
to b2 45 cell by officer John Doe #4 and escorting officer uniden-
tifiable Trevino. Upon entering the cell I pointed out the fecal
matter to the officers in which they took me to b2  dayroom.

#38).On 9-13-13 between 1400 a nd 1500  in b2 dayroom sgt Tyronne
Jones came to talk to me.He stated "I have just came from inspecting
that cell and I will personally clean every thing but the ceilling".
I stated " you would not want to live in somebody elses poop".
Sgt.Jones stated"you are right and I am not mad at you for refusing
but I have to put you in there.,Either by force or by choice
that is up to you."I stated "you have a hundred trustees at the
trustee camp they can come and clean the ceiling". Sgt.Jones
said"in order to bring in a ladder you have to get special permission
and that is to much of a hassle".

#39). On 9-13-13 between 1400 and 1500 Sgt.Jones contacted Sgt.
vallance to let him know the cell was contaminated .This was
the second timeSgt.Shawn Vallance was allerted to this matter.
Sgt.Jones then came and told me, "Sgt.Vallance said to put you
in there or write you up".I stated "if I had to go back in there
I would harm my self". I was then taken to A3-51 seclussion cell.

#40).On 9-13-13 about 1500; at a3 seclussion cell I stated to
nurse Lisa sherwood "I dont want to be here as an inpatieint
I want to discharge. Ido not consent to any more more treatment,
also any more treatment I recieve from this day forward is not
consentual.I am deliberately being held aginst my will". By me
stating this and not being allowed to refuse treatment the University
of Texas Tech Medical services and the Texas Department of Criminal'
Justice has breached our signed agreement and violated my due
process rights.

#41). On 9-13-13, at about 1830 on A-3,51 seclussion; I was taken
out of the cell to use the restroom. I was made to urinate standing
up naked with my hands cuffed behind my back in front of two
officers. While trying to urinate, I was having excrutiating
pain in my bladder area every time I tried to force urine out.
I reported this to officer Tony Thomas, who placed me back in
the cell.

#42). On 9-14-13, at about 1030 in seclussion cell A-3,51; I
reported to nurse Stephanie Orr that I needed to see a doctor,
she stated,"Write a nurse sick-call on..Monday."[It is well known
in seclussion, inmates are not allowed to have writting materials
there, so I had no way to write a sick-call.] Due to nurse Orrs
deliberate indifference shown towards my serious medical problems,
I was forced to just lay on the floor all day in excrutiating
pain naked and suffering.

#43). On 9-14-13, at about 1600; My pain in my bladder became
more severe, so I contacted nurse Orr and asked,"Can I please
see a male doctor?" She asked,"Why?" I stated my reason why, in which
she asked,"How come you didn't say anything sooner?" I responded,
"I told you earlier that I needed a doctor, but you told me
to write a nurse sick-call." She then responded,"I gave you our
typical response to somebody that is in seclussion." I responded,
"When does a cry for help become a typical response? You forced
me to sit here all day and suffer through pain, and not once
did you ask me what's wrong with me." Nurse Orr showed deliberate
indifference to my serious medical needs. She subjected me to
a day full of unnecessary and wanton infliction of pain that
could have been alleviated if she would have helped me instead
of giving me a typical response. Her statement of,"I gave you
our typical response to people in seclussion," shows the ignoring
of medical needs is a common unwritten policy at the montford
unit.

#44). On 9-14-13, at about 1600; Nurse Orr did an assessment
on me in which she determined my bladder was sore to palipation
and distended.

#45). On 9-14-13, at about 1800; I was sent to the E.R., where
it was determined that I needed an in and out cathiderization. I
had been escorted to the E.R. naked with a suicide blanket wrapped
around me by three male officers. Once at the E.R., those officers
switched out with other officers. At this time, I was set up
on a gurney with officer John Doe#5 on my left, officer Darla
Hubble(who's a female) on my right, and segeant of corrections
officers Robert Creager on my right, supervising the situation.
At this time my blanket was opened exposing my genital area.
I was set up on the gurney directly in front of a window, which
is a high trafficking area due to shift change. I layed there
with a tube in my penis,with people walking continuesly by gawking
at me. Officer Hubble continuosly watched my groin area while
the cathederization took place. This invasion of privacy was
done solely to humiliate me. It is well known inmates at the
montford unit are kept naked in certain areas of the unit even
though the area is constantly watched by members of the opposite
sex. This is a malicious and degrading act done in order....

#45 CONTINUED...
to humiliate and discourage offenders from coming to the unit
or mis-behaving.

#46). On 9-14-13, after 1800; I returned to pod A-3,51 cell,
where nurse Orr apologize to me for not acting sooner. I stated
to her,"That was the most uncomforting feeling I've ever had,"
refering to getting the cathader.

#47). On 9-15-13; I continued having bladder pains throughout
the day. I refused to go through the huniliating process again,
so I waited to use the restroom until I showered. I mainly did
this so that I wouldn't have to pee handcuffed with my hands
behind my back in front of everybody again. I also had to defecate
extremely bad, I didn't because I would've had to use the bathroom
naked with no opportunity to clean the toilet. This is the same
toilet male offenders have to pee in handcuffed, which limits
access to aim the urine in the toilet, therefore it splashes
all over the side of the toilet and dries. I also would not be
given the opportunity to wipe after defecating, handcuffed.

#48). On 9-16-13; I was escorted back to cell B-2,45, where it
was still covered in fecal matter. I refused to go in there.
I was then escorted back to A-3,51 cell.

#49). On 9-16-13; I was escorted back to cell B-2,4 row, and
placed in a cell directly across from B-2,45. Escorting officer
Jane Doe#2 stated,"Boy we had a hard time trying to get somebody
ladder trained, just to find out the ladder was to short." From
my view point, 45 bunk door could be seen there was a sign on
it that read,[RED TAGGED DUE TO: POOP EVERYWHERE], signed by
SGT. JOHN MCCRAW.

#50). On 9-16-13, after 1400; I spoke with nurse Holly, who filed
a discharge form for me stating,"I no longer want to be treated."
It was documented that I was in a culpable state of mind and
had no diagnosis or condition on access 1. Therefore, I had no
reason to remain on montford unit. I was under strict knowledge
from the forms of the agreement I signed that I had the right
to discontinue treatment at any time.

#51). On 9-16-13, at 1700 or later; An inmate trustee was brought
to clean up cell B-2,45. He was alloted a full chemical suit
to clean the cell in, yet I had been forced to sleep naked in
this same cell. It took 10 days to come clean the cell after
my first initial report.

#52). On 9-17-13; I was scheduled for an M.D./M.L.P. follow up
visit concerning my bladder. Yet no escorting officer ever came
to take me. An HSM-82 refusal was forged, saying I denied treatment,
in which my signature was placed on there as RTS=refused to sign.
Yet it is known on B-2 we are not allowed to posses writting
materials, also(unknown signee John Doe), signed as a witness,
but the authorizing doctor signature that is required for a refusal
was never given. Unknown signee John Doe knowingly showed deliberate
indiffernce to my serious medical needs by refusing to take me
to see a doctor as scheduled, which shows there is an un-written
policy/practice of refusing medical treatment to offenders. This
denial resulted in a continuation of physical pain that could
have been alleviated, had I been allowed to see a doctor as ordered.

#53). On 9-19-13; I was moved from B-2,4 row, to A-1,3 row, where
I was placed in the cell naked with no matters, writting materials,
or anything but a suicide blanket. I asked female correctional
officer Hatchet,"What is this about?" She responded,"You're on
SPP, that means you are on the warden committees special program."
I asked her,"Why?" She replied,"You're either crazy or you pissed
somebody off." This so called warden committees special hearing
was a denial of my due process rights. I had already had a discharge
put in for me, therefore a hearing should have been held to compell
treatment Per policy I-71.1 OFFENDERS RIGHT TO REFUSE TREATMENT,
DEPARTMENTS RIGHT TO COMPELL TREATMENT.[PLEASE REFER TO EXIBIT(C).]
Also, the hearing should have been held to either confirm or
deny the compelling of treatment in which I should have been
provided and advocate. ASPER POLICY:I-70.2 REQUEST/CONSENT FOR
TREATMENT OR SERVICES.[PLEASE REFER TO EXIBIT(D).] I was placed
in an extremely harsh solitaire like condition, in which in violation
of policy I was denied all legal material and mail. This situation
was an atypical and significant hardship with extreme measures
on my every day life.

#54). On 9-19-13, at about 1700; Nurse Jane Doe#1 came cell side
and stated,"You are on SPP, the warden held a hearing on you
in which it was determined you would be placed here for 15 days
minimum. You will not receive mail, clothes, hot meals, or any
bedding beyond a suicide blanket. You may not discharge from
back here either." I stated,"I want to write a greivance," I
also asked,"What doctor ordered this move?" She stated,"I will
contact provider Woodall to write you a greivance, and doctor
Khanderia sent verbal orders to move you here."

#55). On 9-27-13; I asked nurse Jane Doe#1 to please contact
provider Woodall to please come write another greivance for me
because my time was running out. She stated,"I will contact her
via email."

#56) On 10-02-13; I was taken off SPP. this was 14 days after I
had been placed on it.  This was done to purposely punish me
for writting a grievance.  It was retaliation to deprive me
of my 15 day grace period to file grievances.  I had requested
numerous times that provider Woodall come write a grievance
for me, yet she only came once.  Not one time while in SPP was
I allowed to recreate outside of the extemely small cell, also
I was only allowed five squares of toilet paper a day.  And,
just as in all other denials of grievances mentioned in this
document I was not allowed to possess a grievance nor a pen
to write with.  Nor was I allowed to purchase any such property.

#57) On 10-12-13, at breakfast; On E-3, 29 cell, I recieved
a food loaf from officials Matt Gosnell, FNU Rodriguez, and
C.O. Tricina Gipson.  The food loaf is a mixture of the meal
baked together into a pile.  The date on this one was 9-11-13
attached to the bag.  I expressed my concern to C.O. Gosnell,
who stated "The bag has the wrong date on it."

#58) On 10-12-13, at around 0900; I told Sgt. Joshua Keeney
about the out of date food loaf.  He replied "It's only one
day old, you'll be okay."  Again I was denied filing a grievance.

#59) On 10-13-13, at breakfast, Officer Samual Marado came to
me cell door and showed me TDCJ policy, that stated food loaf
(loaves) are only good for 14 days after the date made.  He then
stated " your 17 days past the 14 day date.  Officer Tricina
Gipson then spoke up and said "We have another one here out
of date, but we are going to give you a hot tray and the Lt
is taking you off food loaf."

#60) On 10-14-13, at 0800: Officer Mellisa Olmstead came to
my door and stated, "Oh you went and cried like a little bitch
and got off food loaf I put you on." I refused to respond.

#61) On 10-13-14, at 10:35; I was served a major case by counsel
substitute Diana Ceja.  At which time officer Olmstead was present
with her.  Ms. Ceja stated to me, "You have a case here written
by officer Olmstead."  Officer Olmstead responded, I told you...
so...referring to an earlier comment about getting me a case.

#62) On 10-14-13, at about 1300; Officer Olmstead came on the
run to pick up trays, in which she opened the the "bean chute"
a solid steel door built into the cell approximately 7 inches
high and 3 feet wide.  But has a compression spring lock to
keep it closed and requires a steel bar to pry open.  I asked
her "why do you keep tripping with me?"  We begin arguing back
and forth at which time officer Olmstead used the bean chute
pry bar to assault me without justification or provocation.
She did this maliciously and sadistically by running her bar
through the slot and hitting me in the testicles with it.  Then
she stood there a moment grinning at me and turned and left,
very aware that she had injuried me.  She did this with no peno-
logical purpose except the intentional of inflicting unnecessary
and wanton pain.

#63) On 10-14-13 about 1600; Officer Olmstead refused to feed me skipping right over my cell at dinner.

#64) On 10-14-13 at 1800 I stated the assault to the new shift officer, John Doe#6 who denied a report of the incident because he said I was to demanding. This officer showed deliberate indifference to my health and safety by refusing to get me help.

#65) On 10-14-13 at 1830 at about 1900; Nurse Parish made her rounds where I stated to her "Nurse Lady I need some help, I got hit by an officer and I'm hurting really bad. She hit me with a bar over a disagreement." Nurse Parish stated, "I am going to get you help right now and left."

#66) On 10-14-13 at about 1930; Sargeant of Corrections officer Randy Hancock cme to do his rounds and I stated to him. "I had been assaulted." He then escorted me to the dayroom where Sgt. Riojas was called in. he asked me "Why I waited so long?" I stated who was I going to tell? The person who assaulted me? I told the first available officer other than the assaulting officer, that was John Doe #6 who denied me any help." Sgt. Riojas stated, "I hope she fucked your sorry ass up! This shit your telling me ain't going no where, I told you once before you don't have nothing coming over here.

#67) On 10-14-13 at 1830 during count (out of order) I stated to officer Tricina Gipson "I have been assaulted" She stated "just stand here by the door the Sgt. will be around soon." This officer showed deliberate indifference to my health and safety by failing to take me to medical and get me some help regarding the incident.

#68) On 10-14-13 at 2100; I was escorted to the E.R. (after about a 3 hour delay from the time I made the initial report) an inspection was done by R.N. S. Carpenter who prescribed me a 24 hour ice pack and 72 hours of Ibuprofen. Once Ms. Carpenter learned this was a staff assault she she left me the room with Sgt. Riojas when they came back in she gave me an ice pack and said "We are done." I asked both Sgt.s Hancock and Riojas if they were going to take pictures of the injury. Riojas responded, "for what? There is nothing wrong?" I stated "the hell there ain't my nuts are swollen like a grapefruit and I can barely walk, I want pictures taken as per A.D. 03.47 [SEE EXHIBIT E] Which states pictures will be taken after any use of force to credit or discredit a claim. Sgt. Riojas stated "I don't give a damn about policy and it would be in your best interest to let this go." These Sgts named above showed deliberate indifference to my helath and safety and conspired to discredit my claim and deprive me of my rights. As a result of this injury I have sustained a permanent injury to my righ testicle which is still swollen and causes me pain upon urination and ejaculation. This was an excessive use of force with no legitimate purpose.

#69) On 10-21-13 at mail call; officer Maria Alleman brought
me a legal letter from a magistrate opened outside my presence
I stated to her "this is a legal document and should have been
opened in front of me." She then took the letter and left.
Later Sgt. Riojas showed back up with the letter. Upon arrival
I asked that pictures be taken he said, "NO, but he would write
an I.O.C. for me but I had better remember he has eyes everywhere."

#70) On 10-26-13 at E 3 barber shop offender Nicholas Castleberry
and I both asked officer Crain if we could clean our cells?
I further stated "that I had been in the same cell almost a
month with no way to clean my cell and there is old food partic-
les, dried semen, and other things of that nature on the walls."
Officer Robert Crain then stated "We don't give retards chemicals
ya'll won't do anything but drink them". While escorting me
back to my cell officer Crain stated, "You must be 29 bunk Mr.
E 3 writ writer, We've been told not to give you anything!"
This officer openly admitted to retaliation being taken by staff
against me for using the grievance procedures.

#71) On 10-28-13 about 1800 on E 3 I stopped officer Riojas
about getting my cell cleaned in which he responded "Well if
it isn't Mr. Johnny Cochran himself, savior of the retards!
He then laughed and walked away. The filthyness of my cell
was noticible yet he refused to provide any type of relief to
clean the cell. It was well known that there was an abundance
of trustees and chemicals to clean with- as the officer's dining
areas were routinely cleaned but none of the labor nor cleaning
supplies were made available to the in-patients.

#72) On 10-28-13 after 1800 at mail call, officer Mellisa Honesto
brought me two legal letters marked returned to sender from
attorneys I wrote. They were opened and missing pages I then
asked her to call rank.

#73) On 10-28-13 after mail call Sgt. Riojas showed back up
with my letters. I stated "this is the third time this has
happened, you keep messing me over." He responded "look here
you piece of shit, I don't know how many times I have to tell
you this but this is my unit and what I say goes." I then told
him I was going to write the warden in which he responded "Stevens
is on my side, nobody is going to listen to a psych patient
so you better drop this legal shit and mind your P's and Q's.
I've got eyes and ears everywhere from the mail room to the
O.I.G.'s office." And,"whether you know it or not me and the
Warden and major have already talked about you!"

#74) On November 5th, 2013, I Trent Taylor caught chain and
left the John Montford unit. From 9-11-13 until I left I was
maliciously and sadistically forced to live in filth and physically
abused for complaining about it. This was done after I stated
repeatedly that I wanted to end my "voluntary" agreement of being
an inpatient. Texas Tech employees and several TDCJ employees
conspired to deprive me of my constitutional rights and retaliated
against me for complaining about the problems through the grievance
system, and effort to alleviate the violations.

#75) To this date I suffer permanent physical and psychological injury from my experience. I have bladder and urinary incontinence and malfunction causing me to void my bladder without control and suffering a spasm in my urethea when my bladder suddenly releases. I have as mentioned above pain upon urination and ejaculation. When I have discussed this with nurses, they tell me that the only way I can be seen for these problems would be a trip back to the Montford unit. Which I would have to refuse out of fear.

I, Trent Taylor #1691384 being presently incarcerated on the French M. Robertson unit in Jones County Texas declare under oath and penalty of perjury the above is true and correct pursuant to 28 USC §1746.

_Trent Taylor_ 01691384                                    8-21-2014

VI Prayer for Relief

1) Granting Plaintiff Taylor a declaration that the acts and
omissions described herein violate his rights under the Constitution
and laws of the U.s. and

2) A Preliminary and Permanent Injunction ordering defendants to
cease their unlawful use of the seclusion cells such as forcing
inmates to sleep naked on the floor, forcing inmates to use the
restroom in a drain on the floor forcing inmates to use the rest-
room handcuffed and to stop using the seclusion cells as a punish-
ment against all policies and regulations and

3) A preliminary and permanent injunction ordering the defendants
to have the cells pressure washed by trustees once every 14 days
and or when an inmate is moved, which ever is sooner.  Specifically
the cells used by inpatients for "seclusion" and treatment. Further
to have each cell used in the S.P.P. inspected by a Regional
Director once every 30 days to insure compliance.

4) A Preliminary and Permanent injunction ordering the defendants
to stop the Warden's committees unlawful practice of placing
inmates on S.P.P. without proper due process and stop using the
S.P.P. (Suicide Prevention Program) to deny inmates legal material
and all other First Amendment rights secured by the U.S. Const-
itution.   As well as require the Senior Warden to inspect and
review every week the use of S.P.P. labels and titles on specific
offenders as well as write a document regarding his impressions
and file it among the inmates classification file.  AND,

5) A Preliminary and Permanent injunction ordering the defendants
to bring in an outside plumbing business to evaluate, diagnose and
repair all problems at the defendnat's expense in the seclusion
cells on 3 E wing and anywhere else in the unit that feces overflow
on to the floor or up through the drain.  And,

6) A Preliminary and permanent injunction ordering the defendants
to stop exposing inmates to members of the opposite sex, by passing
out the same paper gowns used at other units designed and created
specifically for suicide prevention, instead of requiring all inmates
to be naked constantly while in the S.P.P. and in the other areas
which are used for psychological evaluation.  AND,

7) Granting Plaintiff Taylor compensatory damages in the amount
of $50,000. against each defendant jointly and severally.

8) Granting Plaintiff Taylor nominal damages in the amount of
$100.00 from each defendant personally involved in the injury or
those aware of the injury but who refused to alieviate the problems.

9) Granting Plaintiff Taylor punative damages in the amount of
$350,000.00 dollars from each liable defendant.

10) Taylor seeks supplemental jurisdiction for various torts assault, negligence, intentional infliction of mental distress and others.   As well as juridicition under the Texas Religious Freedom Restoration Act for which Taylor seeks additional damages.

11) Plaintiff Taylor seeks a jury trial.

12) Plaintiff Taylor seeks appointment of counsel to;
A) Assist him in location of witnesses and other offenders who were housed in the area and heard or saw the events and the complaints submitted verbally to the numerous officials that went through the areas.   Because Taylor is not in a position to investigate and obtain affidavits or depositions as at the time he was not allowed paper or pens to write down names or TDCJ numbers and as such this testimony which will demonstrate the very opposite of any testimony the agency officers will offer to dispute the facts Taylor alleges.
B) This case will likely benefit from the use of experts to verify and dispute the psychological states of offenders and Taylor in particular; as such it is a complex case beyond the minimum amount of knowledge of a Pro se complainant.
Moreso it is crucial that experts in general[l y] will not willingly work for Pro se litigants.   Finally, Taylor can anticipate that the agents of the state will argue the fact of competency and reality of the injury and nature of the injury upon Taylor and it is beneficial to the court to have counsel there to bring the case to trial.
C) Taylor asserts that the case is legally complex owing to questions of whether or not various treatments are necessary or proper in the housing of offenders with psychological problems and as such it benefits the court to appoint counsel.
D) The evidence will consist in large part of testimony so as to require skill in cross examination and presentation of evidence.
E) Last appointed counsel will aid the court in the efficient and equitable disposition of the case.


13) Taylor asks that in the event counsel cannot be appointed to assit him that the court ask if there are any law students that could through the supervision of Texas Tech Law School assit him in developing the case and obtaining evidence.

C. Has any court ever warned or notified you that sanctions could be imposed? _____ YES _x_ NO

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed warning (if federal, give the district and division): _____ N/A

2. Case number: _____ N/A

3. Approximate date warning were imposed: _____ N/A

Executed on: __8- 21 - 14__
            (Date)

Trent Taylor
            (Printed Name)

            (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachment thereto are true and correct.

2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand that I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits are dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger or serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire **$350** filing fee and costs assessed by the Court, which shall be deducted in accordance with the law from the inmate account by my custodian until the filing fee is paid.

Signed this __2 1 st__ day of _____ August __, 20 __14__.
            (Day)                    (Month)              (Year)

            Trent Taylor
            (Printed Name)

            (Signature of Plaintiff)

**WARNING: The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limbed to monetary sanctions and/or the dismissal of this action with prejudice.**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISRICT OF TEXAS

LUBBOCK DIVISION

```
                                      I
Trent Taylor #01691384                I
    Plaintiff,                        I
                                      I
v.                                    I
                                      I
Marion Williams, Medical Director     I
    et.al     Defendants              I        AFFIDAVIT IN SUPPORT OF
                                      I        EXHIBITS (A)-(F)
                                      I
```

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, Trent Taylor # 01691384, plaintiff, Pro-se indigent who is over the age of 18 and competent to make an affidavit in support of EXHIBITS (A) – (F)

1)  EXHIBIT (A) attached to this affidavit is a replica drawing of sedussion cell D2-51 drain in which officers Chevis Parker, Franco Ortiz, Unf Martinez, and Robert Riojas each told me to urinate in instead of allowing me access to a toilet, this is also the same drain that was stopped up and over flowed the row sewage/ human waste I was forced to sleep naked in full contact with on the floor.

2)  EXHIBIT (B) attached to this affidavit, is the "Correctional Managed Health Care Policy I-66.3 Psychiatric Sedussion". This policy governs the managment of the sedussion cells. These policies are signed off on by Defenants, Lanette Linthicum and Denise De Shields. This EXHIBIT show that Defendants Marion Williams, Raye Mitchell and Reblla Ramirez knew I was left in seclussion after Discharge Criteria was met. Defendants Creastor Henderson, Daun Pickert, and Irma Ramirez also voilated this policy by knowingly leaving me in this cell under atypical and significant hardships as did Befenants Robert Riojas, Chevis Parker, Franco Ortiz and Unf Martinez, who all also violated part of this policy by refusing me lifes necessities such as denying me restroom and water privileges.

3)  EXHIBIT (C) attached to this affiavit is the (CMHC) policy I 71.1 offenders right to refuse treatment several defendants voilated this policy and my constitutional rights by denying me the right to refuse treatment. These defend- ants were Marion Williams, Rebcca Ramirez, Raye Mitchell, Warden Robert Stevens, Michael Mcdonald, Shawn Vallance, Opal Mankins, Janis Woodall, Kim Davis, Sean Odanell, Marilyn Noble, Priya Khandheria. This was done because I had terminated my consent of admission get these defendants continued to compell me to recieve treatment without adherring to policy regarding holding a hearing to compell treatment.

1

4)   EXHIBIT (D) attached to this affidavit is the (CMHC) policy I-70.2 consent
     for admission to inpatient psychiatril care. This policy was violated by Defendants,
     Marion Williams, Rebcca Ramirez, Raye Mitchell, Robert Stevens, Michael Mc Donald,
     Shawn Vallance, Opal Mankins, Janis Woodall, Kim Davis, Sean Odonell, Marilyn
     Noble, Priya Khandheria. This was done in violation of my rights to the U.S.
     constitution because the policy states I can withdraw my consent to admission
     yet these defendants failed to honor that procedure and forced me to recieve
     treatment.

5)   EXHIBIT (E) attached to this affidavit is the policy AD 3.47 taking photographs
     following a use of force or injury. This policy was violated by Randy Hancock
     and Robert Stevens in violation of my First Amendment Right. This denial to
     take picures following the staff excessive force was a conspiracy to discredit
     my claim and deprive me proper access to redress the constitutional violation.

6)   EXHIBIT (F) attached to this affidavit is a series of grievances written over
     several incidents in order to best exhaust all my state remidies.

Pursuant to 28 U.S.C. § 1746

I Trent Taylor TDCJ # 01691384, being presently incarcerated on the Robertson Unit,
in Jones County, Texas. declare under penalty of perjury that the foregoing is true
and correct.

Executed on: 8-21-14

                                                    01691384
                                        Trent Taylor Pro-se
                                        TDCJ #01691384
                                        12071 FM 3522
                                        Abilene, TX. 79601

2

# EXHIBITS (A)-(E)

EXHIBIT (A) - Seclussion Drain

EXHIBIT (B) - CMHC I-66.3

EXHIBIT (C) CMHC I-71.1

EXHIBIT (D) CMHC I-70.2

EXHIBIT (E) AD 03.47

61691384

Trent Taylor   61691384
Pro-se
12071 FM 3522
Abilene TX 79601

EXHIBIT A

Seclussion DRAIN
Approximate SIZE



= Steel cover

= Holes

EXHIBIT B

CORRECTIONAL MANAGED
HEALTH CARE
POLICY MANUAL    NUMBER I_-66.3
## PSYCHIATRIC INPATINET SECLUSION

Purpose:To establish guidelines for the use of seclusion as a
special procedure for patients at inpatient psychiatric facillities

Policy: Inpatient psychiatric facillities may utilize seclusion
as a special treatment procedure for limited periods of time by,
physician,psychiatrist/psychiatric mid-level practiooer order.
The use of seclusion requires clinical justification and is only
employed to protect the patient from self-injuries or from injury
to others.Seclusion is not employed as punishment or as a convenience
for staff.

**Procedure:**
I. Only a psychiatrist, mid-level practitioner or physician may
order seclusion.Telephone or verbalorders must be co-signed with-
in 72 hours. A patient may be placed in seclusion during emergency
situationson order from a qualified health sare proffessional
while awaiting a psychiatrist/MLP order. Specific discharge criteria
(target behavior) will be include in the order to place offender
in seclusion.

II. Orders for seclusion may not exceed 12 hours. Renewal of sec-
lusion requires another physician order. Orders may not be standing
or PRN

III.seclusion must end as soon as the discharge criteria specified
in the admission order are met.

IV.The mental health observation checklist (HSP.5) will be utilized
for documentation of every 15 minutes observation while in seclusion.

V.patients in seclusion must have access to daily bathing and nec-
cessarry bathroom privelages.

VI.Facilities will maintain a log of admissions to seclusion in-
cluding patient name,TDCJ#,date and time of and authority for
admission and date and time of release.

VIII. All incidents of seclusion are reporeted dailey to the
facility clinical director/or designee for review.

**REFERENCE:** 2008 NCCHC StandardP-I-01,Restraint And Seclusion
(essential)

EXHIBIT C

Correctional Managed

Health Care Policy Manual   Number I-71.1


OFFENDER'S RIGHT TO REFUSE TREATMENT,
DEPARTMENT'S RIGHT TO COMPELL TREATMENT


PURPOSE:   To ~~authorize~~ delienate a patient's right to refuse medical Treatment
and the departments authority to compell medical Treatment of an offender.


POLICY: Any offender may elect to refuse offered treatment ████████
████████████████████████████████████████████████████
████████████   unless it is determined that the individual lacks
the capacity to make that decision. Legal Authority to compel
medical treatment is permitted if an offender's refusal to accept
medical care Jeopardizes the States interests in (1) Protecting and
Preserving Life●, or (2) Preventing suicide


PROCEDURE.

(I.) An offender may refuse all diagnostic and treatment recommendations
but may be isolated when his condition is a Danger or Potential
danger to himself, the staff or Population. The refusal should be written
in black ink and demonstrate the patient is making an Informed decision.
Included in the documentation should be Service or treatment, offered,
the condition for which service or treatment is indicated, and list
of Potential adverse outcomes that may result from refusing care
that a reasonable Person would want to know. All refusals must be
documented on a Refusal Of TReatment or Services form (HSM-87),
Attachment B. and Filed or Scanned in the offender's Health record

(II.) If there is reason to suspect that an offender is
incapacitated and medical Judgement Indicates treatment
or diagnoses is necessary, reasonable and important, then
a Psychiatric assessment of the offenders medical decision
making capacity must be made. In life threatening
emergencies, the capacity assessment is made by the
available Senior medical staff, If time allows, Two Physicians,
one of whom should be a Psychatrist, will Perform
the capacity assessment. The reason for Performing the capacity
assessment must be documented in the health record.