IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TAYLOR, TRENT § | | |
| TDCJ NO. 01691384, § | | |
|     *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION No. 5:14-cv-00149 |
| § | | |
| MARION WILLIAMS, et al., § | | |
|     *Defendants.* § | | |

**DEFENDANTS MARION WILLIAMS AND RAY MITCHELL'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)**

Defendants, by and through the Attorney General for the State of Texas, submit this **Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6)** in response to Plaintiff Trent Taylor's Complaint and More Definite Statement.[1] These Defendants have been previously answered for, however, they are intended to be Defendants for The Texas Tech Health Center, not the Texas Department of Criminal Justice.[2] They will be represented by Kim Coogan in this matter, along with the other Texas Tech Health Center Defendants.[3] In support, Defendants respectfully offer the following:

**I.**
**Statement of the Case**

Plaintiff Trent Taylor is an inmate, incarcerated in the Texas Department of Criminal Justice (TDCJ). Offender Taylor was sent to the Montford psychiatric unit after he was declared suicidal when he swallowed an overdose of pills.[4] Taylor was at the Montford Unit for two months,

---

[1] D.E. #1.
[2] D.E. #32 and #33.
[3] D.E. #33
[4] D.E. #1.

from September 6, 2013 to November 5, 2013. He alleges that he was subjected to a number of Constitutional and tort violations during his stay centering the conditions of his confinement, deliberate indifference to his medical needs, due process claims, retaliation claims, use of force, and conspiracy. Offender Taylor is seeking injunctive relief and over $18,804,700 in damages.

**II.**
**Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1)**

To the extent that Plaintiff Taylor is suing Defendants for money damages in their official capacities, his claims are barred by the Eleventh Amendment to the Constitution. Neither a state nor a state official sued in his or her official capacity for damages is a "person" for purposes of liability under §1983.[5] Moreover, a suit for damages against a state official in his official capacity is not a suit against that individual but a suit against the state.[6]

The Eleventh Amendment to the United States Constitution bars such suits against a state unless the state has waived its immunity or Congress has abrogated immunity pursuant to its power under §5 of the Fourteenth Amendment. In passing §1983, Congress "had no intention to disturb the States' Eleventh Amendment immunity."[7] Neither Congress nor the State of Texas has waived Eleventh Amendment immunity with regard to 42 U.S.C. §1983.

42 U.S.C. §1983 provides a federal forum to remedy the violation of constitutional rights, but "it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties."[8] Therefore, Offender Taylor's claims against Defendants in their official capacities must be dismissed for lack of jurisdiction.

**III.**

---

[5] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).
[6] *Id.*
[7] *Id.*
[8] *Id.*

**Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)**

    A. **Standard of Dismissal**

A party is entitled to dismissal under FED. R. CIV. P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. Under FED. R. CIV. P. 12(b)(6), all well-pleaded facts are viewed in the light most favorable to the plaintiff, but the plaintiff must allege facts that support the elements of the cause of action in order to make out a valid claim.[9]

When presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.

First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.[10] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."[11] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]' – "that the pleader is entitled to relief.'"[12] This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13]

---

[9] *Hale v. King*, No. 07-60997, 2011 WL 2045346 at *3 (5th Cir. May 26, 2011) (q*uoting City of Clinton v. Pilgrim's Pride Corp*., 632 F.3d 148, 152-53 (5th Cir. 2010).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (May 18, 2009).
[11] *Id* at 679.
[12] *Id*.
[13] *Id.*; *See also Fowler v. UMPC Shadyside*, 578 F.3d 203 (3rd Cir. 2009).

After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[14] To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible.[16]

### B. Respondent Superior Claim

As a threshold matter, in order to hold someone liable under 42 U.S.C. § 1983, an inmate must show that the Defendant was personally involved in the alleged constitutional violation. Personal involvement in an alleged constitutional depravation is an essential element to a civil rights cause of action.[17] The doctrine of *respondent superior* cannot support liability in §1983 actions.[18] Thus supervisory officials cannot be held vicariously liable solely on the basis of their employer-employee relationship with an alleged wrongdoer.[19] In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged wrongdoing. To the extent that a Defendant is being sued in his or her supervisory capacity, supervisory officials may not be held liable for their subordinates' actions under any theory of vicarious liability under 42 U.S.C. §1983.[20]

---

[14] *Iqbal*, 556 U.S. at 663.
[15] *Id.* at 1948
[16] *Id.* at 678-9; *see also Twombly*, 550 U.S. at 555, & n.3.
[17] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).
[18] *Monell v. New York Dep't of Social Services*, 436 U.S. 658, 693 (1978).
[19] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983); *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982); *Watson v. Interstate Fire and Casualty Co*., 611 F.2d 120, 123 (5th Cir. 1980).
[20] *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985) (per curiam).

An official may be held liable when he is personally involved in the acts causing the deprivation of a person's constitutional violation sought to be redressed.[21] Thus, to hold the supervisory official accountable for the acts of his subordinates, §1983 "requires more than a simple ratification of an impermissible act when the ratification is based on independent legitimate reasons."[22] To prevail against a supervisor, a plaintiff must show that such a failure "caused" or was the "moving force" in causing plaintiff's harm.[23]

### C. Medical Deliberate Indifference Claim

Being deliberately indifferent to a prisoner's serious medical needs constitutes "unnecessary and wanton infliction of pain" and is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[24] However, courts have determined that deliberate indifference is an extremely high standard to meet.[25]

To establish a deliberate indifference claim, the plaintiff must show that the defendant was (1) Aware of the of the facts from which he could infer an excessive risk to the prisoner's health and safety, and (2) that he actually inferred there was an excessive risk to the prisoner's safety.[26] In order for a prison official to be held liable for deliberate indifference, the official must "*know of* and *disregard* an excessive risk to inmate health and safety."[27] Deliberate indifference under the Eighth Amendment requires a showing of "subjective recklessness" as used in criminal law.[28]

---

[21] *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *Lozano*, 718 F.2d at 768; *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981)(per curiam).
[22] *Bowen*, 669 F.2d at 988.
[23] *See Monell*, 436 U.S. at 692, 694 (1978); *Vela v. White*, 703 F.2d 147, 153 (5th Cir. 1983).
[24] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir.2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).
[25] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[26] *Easter* at 837.
[27] *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-03, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)) (emphasis added).
[28] *Farmer v. Brennan*, 511 U.S. 825 (1994).

In *Domino v. Texas Dep't of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference.[29] Rather, the plaintiff must show the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[30] Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment."[31] And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference.[32]

239. F.3d 752, 756 (5th Cir. 2001). Furthermore, an inmate's disagreement with a physician about his medical treatment is insufficient to state a claim of deliberate indifference.[33] Mere negligence, neglect, or medical malpractice does not constitute deliberate indifference.[34] Gross negligence does not rise to the level of deliberate indifference.[35] When the medical records reflect assessment and treatment of an inmate's medical complaints, there is no deliberate indifference.[36]

When the basis for a deliberate indifference claim is a delay in medical care, the alleged deprivation must be "sufficiently serious."[37] The delay in medical care must result in *substantial* harm in order to violate the Eighth Amendment.[38] A plaintiff needs to indicate that his physical

---

[29] *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).
[30] *Id*.
[31] *Estelle*, 429 U.S. at 107.
[32] *Farmer*, 511 U.S. at 838.
[33] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).
[34] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1993) (citing *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979)).
[35] *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996).
[36] *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990).
[37] *Wilson v. Seiter*, 501 U.S. 294, 298, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)
[38] *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir.1993).

condition during the time of the delay warranted prompter medical treatment or that his condition wholly debilitated him.[39]

### D. Denial of Due Process Claim

Generally speaking, due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incident of prison life, or to those that extend the length or duration of confinement.[40] The Fifth Circuit has held that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest."[41] Furthermore, the protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" which are adverse to a prisoner.[42] Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification.[43]

Cases where segregated confinement is sufficiently atypical to implicate a due process liberty interest involve circumstances that are much harsher than those presented here. For example, in *Wilkerson v. Stalder*, 329 F.3d 431 (5th Cir. 2003), the Fifth Circuit held that due process *might* have been violated where the plaintiff had been kept on lockdown status for thirty years.[44] In another case, the Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty interest, in part because the conditions

---

[39] *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1114 (N.D. Tex. 2001)
[40] *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).
[41] *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995)).
[42] *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir.1997).
[43] *Sandin*, 515 U.S. at 484.
[44] *Id.*, 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under *Sandin*).

there were "more restrictive than any other form of incarceration in Ohio."[45] The *Wilkinson* Court noted that at the Supermax facility, "almost all human contact is prohibited."[46] Moreover, confinement at the Supermax facility is indefinite, and otherwise eligible inmates are disqualified for parole consideration.[47]

The Supreme Court makes it clear that no particular process is required for punishment that affects only the *quality* of the confinement rather than the *quantity* of confinement.[48] Atypical and significant hardships are those deprivations which "clearly impinge on the duration of confinement."[49] Courts have found that temporary solitary confinement, disciplinary sanctions of curtailed recreation and commissary privileges, assignment of extra duty, and a reduction in classification status did not represent atypical or significant hardships and did not infringe upon a constitutionally protected liberty interest.[50]

### E. Qualified Immunity

Qualified immunity is immunity from suit and not just a mere defense to liability.[51] Thus, qualified immunity shields a defendant from the costs of trial and the burdens of broad-reaching discovery.[52] The United States Supreme Court has repeatedly stressed that qualified immunity must be decided at the earliest possible stage in litigation.[53] This Court has long held that qualified

---

[45] *Wilkinson v. Austin,* 545 U.S. 209, 214 (2005).
[46] *Id.* at 223.
[47] *Id.* at 224.
[48] *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 2300 (1995).
[49] *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (quoting *Sandin* at 483-84).
[50] *Samford v. Staples*, 249 Fed. Appx. 1001, 1004 (5th Cir. 2007); *Clark v. Stalder,* 103 F.3d 126 (5th Cir. 1996) (unpublished) (citing *Bulger v. U.S. Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir. 1995) ("prison classification and eligibility for rehabilitation programs are not directly subject to 'due process' protections").

[51] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).
[52] *Gaines v. Davis*, 928 F.2d 705, 706 (5th Cir. 1991), *reh'g denied*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).
[53] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

immunity is to be resolved on the face of the pleadings and with limited resort to pre-trial discovery.[54] In fact, district courts have an obligation to carefully scrutinize a plaintiff's claims before subjecting public officials to broad-reaching discovery.[55] This rule is designed to protect public officials from the burdens and costs of litigation and to prevent disruption of government responsibilities.[56]

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.[57] The Fifth Circuit has emphasized the extent of this shield, finding that a government official is entitled to qualified immunity unless all reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted.[58]

Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery.[59]

In determining whether the plaintiff has successfully overcome the qualified immunity defense, the court engages in a two-step inquiry. First, the court must consider "whether the plaintiff asserted a violation of a constitutional right at all -- prior to addressing the potentially

---

[54] *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994) (citing *James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990)).
[55] *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986).
[56] *Harlow*, 457 U.S. at 817.
[57] *Harlow*, 457 U.S. at 818.
[58] *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).
[59] *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense.").

unnecessary question of whether plaintiff asserted a violation of a clearly established right."[60] In making this assessment, the court uses "currently applicable constitutional standards."[61]

If a plaintiff has not cleared this first hurdle, the court need not further address the question of qualified immunity. However, if the court finds that the plaintiff has alleged the violation of a constitutional right–a clearly established constitutional right--the court must go on to determine if the defendant official's actions could reasonably have been thought consistent with that right.[62]

In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed.[63] Regardless of a defendant official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity. Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated."[64]

### i. Marion Williams

Offender Taylor has brought claims against Director Williams pertaining to respondent superior, medical deliberate indifference, and due process.[65] Taylor has not met the requisite threshold for any of his claims against Director Williams to overcome qualified immunity.

All of Taylor's claims against Director Williams for failure to supervise or properly train clearly fall under respondent superior. As stated above, the doctrine of *respondent superior*

---

[60] *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (internal quotation marks omitted); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir. 1991) (holding that *Siegert* requires a plaintiff first to allege a constitutional violation before a court will decide whether the right is "clearly established").
[61] *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).
[62] *Siegert*, 500 U.S. at 230.
[63] *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992) (citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. (1993)); *Valencia v. Wiggins*, 981 F.2d 1440, 1448 (5th Cir.) *cert. denied*, 113 S.Ct. 2998 (1993); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990).
[64] *Anderson*, 483 U.S. at 638.
[65] D.E. #1

cannot support liability in §1983 actions.[66] Thus supervisory officials cannot be held vicariously liable solely on the basis of their employer-employee relationship with an alleged wrongdoer.[67] To establish a deliberate indifference claim, Taylor must show that the Director Williams was (1) Aware of the of the facts from which she could infer an excessive risk to the prisoner's health and safety, and (2) that she actually inferred there was an excessive risk to the prisoner's safety.[68]

Taylor has failed to allege any personal involvement of Director Williams in his complaint, or presented any facts that indicate that Director Williams had any personal knowledge of what Taylor alleges was an excessive risk to his health and safety. Offender Taylor makes allegations that Director Williams has control over policy and procedure, however, Taylor has asserted no facts showing that Director Williams has any control over the unit's policies. Furthermore, Taylor does not even assert how these policies violate his First, Fifth, Eighth, or Fourteenth Amendment rights. Under *Sandin v. Conner,* Taylor has no "created liberty interest of the regulations of Texas Department of Criminal Justice–Institutional Division."[69] Offender Taylor does not have a Constitutional right to regulate policies.

Taylor has also brought a claim against Director Williams for depriving him of his Constitutional rights (Claim 20)[70] however, he does not state which rights, or how Director Williams has any personal involvement. To the extent that this alleged deprivation refers to any complaints brought against Director Williams, his claims are barred because Taylor has not alleged any personal involvement, and therefore cannot overcome qualified immunity.

All claims against Director Williams should be dismissed entirely.

    ii.    **Ray Mitchell**

---

[66] *Monell* at 693.
[67] *Lozano* at 768; *Bowen* at 988; *Watson* at 123.
[68] *Easter* at 837.
[69] 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).
[70] D.E. #1 at 15.

Offender Taylor has brought claims against Director Mitchell pertaining to respondent superior, medical deliberate indifference, and due process.[71] Taylor has not met the requisite threshold for any of his claims against Director Mitchell to overcome qualified immunity.

All of Taylor's claims against Director Mitchell for failure to supervise or properly train clearly fall under respondent superior. As stated above, the doctrine of *respondent superior* cannot support liability in §1983 actions.[72] Thus supervisory officials cannot be held vicariously liable solely on the basis of their employer-employee relationship with an alleged wrongdoer.[73] To establish a deliberate indifference claim, Taylor must show that the Director Mitchell was (1) Aware of the of the facts from which he could infer an excessive risk to the prisoner's health and safety, and (2) that he actually inferred there was an excessive risk to the prisoner's safety.[74]

Taylor has failed to allege any personal involvement of Director Mitchell in his complaint, or presented any facts that indicate that Director Mitchell had any personal knowledge of what Taylor alleges was an excessive risk to his health and safety. Offender Taylor makes allegations that Director Mitchell has control over policy and procedure, however, Taylor has asserted no facts showing that Director Mitchell has any control over the unit's policies. Furthermore, Taylor does not even assert how these policies violate his First, Fifth, Eighth, or Fourteenth Amendment rights. Under *Sandin v. Conner,* Taylor has no "created liberty interest of the regulations of Texas Department of Criminal Justice–Institutional Division."[75] Offender Taylor does not have a Constitutional right to regulate policies.

---

[71] D.E. #1
[72] *Monell* at 693.
[73] *Lozano* at 768; *Bowen* at 988; *Watson* at 123.
[74] *Easter* at 837.
[75] 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Taylor has also brought a claim against Director Mitchell for depriving him of his Constitutional rights (Claim 20)[76] however, he does not state which rights, or how Director Mitchell has any personal involvement. To the extent that this alleged deprivation refers to any complaints brought against Director Mitchell, his claims are barred because Taylor has not alleged any personal involvement, and therefore cannot overcome qualified immunity.

All claims against Director Mitchell should be dismissed entirely.

## IV.
## Conclusion

Offender Taylor does not make any allegations against any Defendants that rise to the level of a Constitutional violation. Defendants pray that Plaintiff Tyson's claims be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) and for failure to state a claim upon which relief may be granted FED. R. CIV. P. 12(b)(6). Defendants pray for all other relief to which they may be justly entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**CHARLES E. ROY**
First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief Law Enforcement Defense Division

---

[76] D.E. #1 at 15.

>*/s/ Kim Coogan*
>**KIM COOGAN**
>Assistant Attorney General
>Attorney-in-Charge
>State Bar No. 00783867
>
>P. O. Box 12548, Capitol Station
>Austin, Texas 78711
>Office (512) 463-2080
>Fax (512) 495-9139
>
>**ATTORNEYS FOR THE DEFENDANTS**

## NOTICE OF ELECTRONIC FILING

I, **KIM COOGAN**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true copy of the above **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)** in accordance with the Electronic Case Files System of The United States District Court for the Northern District of Texas, Lubbock Division on July 22, 2015.

>*/s/ Kim Coogan*
>**KIM COOGAN**
>Assistant Attorney General

## **CERTIFICATE OF SERVICE**

I, **KIM COOGAN**, Assistant Attorney General of Texas, certify that a true copy of the above **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)** has been served by placing it in United States Mail, postage prepaid, on July 22, 2015, addressed to:

**Trent Taylor**, TDCJ #01691384
Connally Unit
899 FM 632
Kenedy, TX 77348
***Plaintiff Pro Se***

                                            */s/ Kim Coogan*
                                            **KIM COOGAN**
                                            Assistant Attorney General