UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TRENT TAYLOR, | ) | |
| Institutional ID No. 01691384, | ) | |
| Prior TDCJ ID No. 1366391, | ) | |
| SID No. 06167597, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:14-CV-149-BG |
| MARION WILLIAMS, *et al.*, | ) | ECF |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Trent Taylor, an inmate incarcerated by Texas Department of Criminal Justice (TDCJ), filed this civil rights action alleging violations of his constitutional rights during his confinement at the John T. Montford Unit (Montford Unit) in Lubbock, Texas.

The undersigned United States Magistrate Judge determined that Taylor's complaint survived preliminary screening and now enters this Report and Recommendation addressing four motions to dismiss that the Office of the Texas Attorney General (Attorney General) filed on behalf of certain Defendants, ECF Nos. 32–34, and making additional recommendations regarding the disposition of this action.

**I.     Brief Summary of Taylor's Claims**

Taylor names forty-seven individuals as Defendants in his complaint, ten of whom are unnamed and/or identified as "Doe." He claims he took fourteen Lortab tablets while at the Robertson Unit, was treated for attempted suicide at a local hospital, and then transferred to the Montford Unit. Taylor asserts claims regarding cell conditions at the Montford Unit, among other

claims, and specifically alleges that he was forced to remain at the unit from September 6, 2013, to November 5, 2013, and was maliciously and sadistically forced to live in filth in certain cells during that time. He claims he suffers permanent physical and psychological injury as a result of Defendants' alleged deliberate indifference to his pleas for medical care and the conditions of his confinement. Taylor also alleges state tort claims; a due process violation related to his claim that he was forced to remain at the Montford Unit; retaliation, harassment, and conspiracy; a First Amendment claim related to mail; and an excessive use of force claim. He seeks a jury trial, damages, and declaratory and injunctive relief.

## II.    Procedural History

United States District Judge Sam R. Cummings transferred the action to the undersigned United States Magistrate Judge Nancy M. Koenig for preliminary screening on September 29, 2014, and the undersigned held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985), on November 20, 2014. Taylor consented to proceed before a United States Magistrate Judge at the hearing.

After determining that Taylor stated claims that survived preliminary screening, the undersigned entered an Order to Answer on February 20, 2015. On March 18, 2015, the Attorney General filed a motion for an extension of time up to ninety days in which to respond to the Order to Answer, and the court granted the motion. On May 28, 2015, the Attorney General filed an *amicus curiae* motion for a Rule 7(a) reply and a motion to stay on June 10, 2015, and the undersigned denied the motions on July 2, 2015. On that date the court ordered that the Attorney General was to file an answer on behalf of the Defendants within twenty days from the date of the order. The court further ordered that the Attorney General was to provide under seal the last known

address(es) of any Defendant(s) no longer employed by TDCJ. On August 10, 2015, the undersigned entered an order requiring that the Attorney General and Taylor provide information regarding the identities of the ten unnamed Defendants.

On July 22, 2015, the Attorney General filed three motions to dismiss: the first is a motion filed on behalf of nineteen individuals whom the Attorney General identifies as employees of TDCJ.[1] The second is a motion filed on behalf of fifteen individuals whom the Attorney General identifies as medical staff and employees of Texas Tech Health Sciences Center (TTUHSC).[2] In the third motion, Defendants Marion Williams and Ray Mitchell, two individuals who are identified as medical directors and who also join in the first motion, move for dismissal. On August 28, 2015, the Attorney General filed a fourth motion on behalf of Joe Martinez.[3] Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. None of the Defendants have consented to proceed before a United States Magistrate Judge.

### III.   Rule 12(b)(1) Motions

In connection with their Rule 12(b)(1) motion, Defendants generally argue that to the extent Taylor is suing Defendants for money damages in their official capacities, his claims are barred by

---

[1] Defendants Marion Williams, Raye Mitchell, Robert Stevens, Robert Riojas, Ricardo Cortez, Stephen Hunter, Larry Davidson, Jennifer Mares, Maria Reyna, Shane Swaney, Emma Parra, Chevis Parker, Raymundo Montez, Tyronne Jones, Darla Hubble, Tricinia Gipson, Randy Hancock, Randy Crain, Shawn Vallance, Melissa Olmstead, and Lanette Linthicum move for dismissal in the first motion.

[2] Defendants Rebecca Ramirez, Creastor Henderson, Stephanie Orr, Susan Nash, Debra Fielder, Shauna Carpenter, Michael Mcdonald, Opal Mankins, Allan Hanretta, Janis Woodall, Kim Davis, Sean O'Donnel, Marliyn Noble, Priya Kandheria, and Denise Deshields move for dismissal in the second motion.

[3] It should be noted that there is some discrepancy in the spelling of certain Defendant's names. For example, the Attorney General identifies Robert Riojas as "Robert Rojas," Tyronne Jones as "Tyrone Jones," and Chevis Parker as "Chevi Parker." For the sake of clarity in the docketing process, the court refers to all Defendants in this action in the manner in which Taylor identifies them and as they are listed on the court's official docket.

the Eleventh Amendment. This argument has merit: the Eleventh Amendment bars a plaintiff from recovering money damages against state employees, including individuals employed by TDCJ and TTUHSC, in their official capacities. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Because the Eleventh Amendment's sovereign immunity bar deprives a court of jurisdiction, any barred claims are properly dismissed pursuant to Rule 12(b)(1). *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Accordingly, Taylor's claims for money damages against all Defendants for actions performed in their official capacities should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. However, to the extent he is seeking injunctive and declaratory relief from Defendants for actions they took in their official capacities, the Eleventh Amendment "does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law." *Id.*

**IV.** **Rule 12(b)(6) Motion**

    A. *Claims that should survive the Rule 12(b)(6) motion*

When analyzing a Rule 12(b)(6) motion, a court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). On the other hand, a court must scrutinize the plaintiff's pleadings to determine whether they state a claim for relief that the court can grant; thus, although the complaint need not contain "detailed" factual allegations, it must contain sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

The undersigned has applied the analysis required for a motion to dismiss to Taylor's claims as asserted in his Complaint and the testimony he gave at the *Spears* hearing.

*Cell Conditions*

Taylor claims he was placed in Cell B-2, 45 at 11:00 p.m. on September 6, 2013, and remained there until sometime between noon and 2:00 p.m. on September 10, 2013. While confined to that cell he claims he was subjected to filthy conditions in the cell, including fecal matter on the floor, ceiling, walls, and water facet. In regard to the water faucet, he claims that he was unable to drink water during his confinement because the faucet was packed with feces. He also complains of cold temperatures in the cell and alleges that he was not allowed clothing and forced to endure the cold temperatures with nothing but a suicide blanket. He claims that he did not eat during his confinement there because he feared contamination and further claims that he was forced to remain on a cold steel bunk in order to avoid contact with the human waste.

Taylor claims that there was a strong fecal odor emitting from the cell that was evident when Defendants Davidson, Hunter, and Cortez took him to the cell and they knew the conditions in the cell were deplorable but placed him in the cell nonetheless. According to Taylor, Cortez confirmed with another officer whether the cell was the one with fecal matter in it and stated that Taylor was "going to have a long weekend." Compl. 18.

Taylor claims that he complained the next day to Defendant Mares around 10:00 a.m. and at several other times thereafter but she did nothing to address the situation. He claims he asked another officer, whom he lists as a defendant but has not identified by name, whether she would move him to another cell or get the cell cleaned, but she told him that a cell transfer was possible only on the weekdays and that he should go back to sleep. He claims he asked Defendant Young for water the following morning, but she refused to give him any. Taylor also claims he told Defendant

5

Dr. Mcdonald about the conditions in his cell later that day, but the doctor told him, "'I'm not here to discuss your living conditions . . .'" and that the doctor wanted to speak only about his mental health condition.  Compl. 19.

Taylor claims that he asked Defendant Reyna at 6:00 p.m. that evening if she would ask for permission to move him or have a trustee clean his cell and she told him that it was too late for such requests.  According to Taylor, he was moved to another cell on September 10, 2013, four days after he was placed in the cell, but was subsequently returned to the cell that same day.  He claims he refused to remain in the cell because of the filthy conditions and walked out; advised the two escorting officers of the fecal matter in the cell; and Defendant Swaney came to the cell to speak with him about his refusal to stay in the cell.  According to Taylor, Swaney told him that Defendant Vallance, another sergeant, told Swaney that Taylor was to return to the cell "regardless."  Taylor also claims that when he specifically explained to Swaney that there was fecal matter "everywhere," Swaney told him, "Dude, this is Montford, there is [excrement] in all these cells from years of psych patients."  Taylor claims Swaney ultimately told him, "Well you know what you got to say," which, according to Taylor, meant that if he stated that he wanted to hurt himself, he would be moved from the dirty cell to a seclusion cell.  Taylor told Swaney that he would "do whatever is necessary to not go back into B-2, 45 cell . . . so for 'the record,' I want to hurt myself."  Compl. 21.

Taylor claims two individuals he identifies as John Does #1 and #2 and Defendant Swaney escorted him to Cell D-2, 51 on September 11, 2013, at 1:55 p.m.  He was then escorted to Cell D-2, 51, a seclusion cell, where Swaney told him that he hoped Taylor froze there.  Taylor claims the cell is ten by ten square feet; has a drain hole in the floor; and contains no toilet, water fountain, or bunk.  He also claims the cell is known as the "cold room" and is used to "freeze out inmates in order to

6

discourage and punish them for their mental illnesses." Compl. 21.  He specifically claims that the air conditioner runs in the cell at all times and inmates are not permitted to have clothing while in the cell.  He further claims that inmates are required to sleep naked on the floor of the cell and that the floor drain was clogged while he was confined there.  Taylor claims he complained about the conditions to Defendant Parra and she stated, "I understand, but I am just doing my job." *Id*.

   Taylor claims Defendant Dr. Khanderia ordered that he be returned to a regular cell the next day, but officers did not move him.  Around dinner time that day Taylor asked Defendant Parker for a restroom break and she told him she would let a male officer know and then told Defendants Ortiz and Martinez, but no one came to his cell.  He claims that he told Defendant Nurse Henderson three hours later that he needed a restroom break and she, like Parker, told him that she would let a male officer know.  He claims he also reminded Parker at this time that he needed a restroom break.  According to Taylor, Martinez came to his cell thirty minutes later and told him that he could urinate in the floor drain; Taylor told him that he did not want to do that because it was not a toilet and he would have to sleep on the floor, and he also told him that he was experiencing chest pains and problems breathing because of an ammonia-type smells emitting from the drain, but Martinez simply told him to "deal with it."

   Taylor claims he told Ortiz a little more than an hour later at 9:45 p.m. that he needed to see a nurse and needed a restroom break, but Ortiz told him that he could "'use the drain like everybody else.'" *Id*. at 23.  According to Taylor, Defendant Riojas came to his cell less than an hour later, Taylor reported chest pains and asked the officer for a restroom break.  He claims Riojas told him to urinate in the drain, and he told Riojas that he would not do that because the drain was clogged and also told him that he had not had a restroom break in twenty-four hours.  Riojas told him that

7

he would return in a few hours and if Taylor behaved, he would see what he could do. Taylor claims that he experienced chest pains and severe pain in his bladder and, because of pain, he finally doubled over and urinated on himself. He claims that his urine mixed with the raw sewage that was on the cell floor and ran over his feet. Because he knew he would have to sleep on the cell floor, he attempted to scoop the sewage from the floor and sweep it under the cell door, but he was unsuccessful.

According to Taylor, at some point thereafter, Nurse Henderson came to his cell and told him that she had heard him banging on his cell door. Taylor claims that he was crying and told the nurse that he had experienced chest pains for two hours, was experiencing pain in his chest and arm, and was suffering from burning in his eyes and throat because of the fumes from the urine and sewage. According to Taylor, a cell extraction team came to his cell, he was removed from the cell, and the nurse examined him and gave him pain medication. Taylor claims Riojas asked for a dry towel and spot dried the cell but did not use chemical agents, and he indicates that sewage remained on the floor. Taylor claims he complained to Ortiz the next morning of extreme cold and told him that his blanket was wet with sewage and that he was extremely cold because the air conditioner was blowing cold air into the cell "full blast" while he lay naked on the floor. Compl. 24. He claims that an officer placed him in the shower to wash off the sewage but placed him back in the cell. He claims that the drain began to over flow again. According to Taylor, four hours later he was placed in the shower again but was escorted back to the cell where fecal matter remained on the floor. According to Taylor, officers finally cleaned the cell, with the exception of the ceiling which was apparently also covered in fecal matter, while he sat in a day room; he claims Defendant Jones told him that he could not clean the ceiling because he did not have a ladder and that Taylor would

be required to return to the cell regardless. When Taylor said he would harm himself if was forced to return to the cell, he was taken to Cell A3-51, another seclusion cell at 3:00 p.m.

Taylor claims he complained of bladder pain while urinating on September 13 but his complaint was ignored. He further claims that he asked Defendant Nurse Orr the following day to see a doctor, she told him to write a sick call request, but he was unable to do so because he was not permitted to have writing utensils. He claims he suffered excruciating pain all day. He claims he asked her again approximately eight hours later and she claimed that he had not told her sooner and, alternatively, that she had given him the standard response given to an inmate in seclusion—to write a sick call request. He claims that when Nurse Orr finally assessed him, she determined that his bladder was distended and sent him to the emergency room where he underwent catheterization. According to Taylor he suffered a lasting injury as a result of the foregoing events: he claims he suffers from bladder and urinary incontinence and spasms.

Assuming the truth of Taylor's allegations, as the court must do, *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998), Taylor has alleged sufficient facts to withstand dismissal of his deliberate indifference claims as to certain defendants. To withstand a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 2015 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). Taylor has done so in regard to his claim of deliberate indifference to his conditions of confinement. *See Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (finding that two inmates placed for twenty-four hours in an 8x8 "uncomfortably cold" isolation cell that had no running water; no mattress, sheets, or blankets; and a grate-covered hole in floor that became obstructed with feces and vomit who were not given cleaning supplies were placed in conditions

assumed to be "so serious as to deprive [the inmates] of the minimal measure of life's necessities"); *see also Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (acknowledging warmth as an "identifiable human need" and that a low cell temperature at night combined with a failure to provide a blanket may deprive an inmate of such); *Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983) (acknowledging that the Eighth Amendment forbids the denial of basic hygiene to a prisoner); *McBride v. Deer*, 240 F.3d 1287 (10th Cir. 2001) (finding inmate who claimed that he was confined to a cell covered in feces for three days without a means to clean the cell stated facts sufficient to establish deliberate indifference). Taylor has also pleaded sufficient facts in regard to his claim of deliberate indifference to serious medical needs. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (a delay in medical care constitutes deliberate indifference if it results in substantial harm).

In sum, Taylor's allegations of deliberate indifference, combined with his allegation of a lasting physical injury, are sufficient to state a plausible Eighth Amendment violation. *See id.* The undersigned therefore recommends that the district judge find that Taylor's deliberate indifference claims as alleged from September 6, 2013, to September 14, 2013, survive the motions to dismiss as to certain Defendants. The undersigned specifically recommends that the district judge find that Taylor's allegations regarding deliberate indifference to serious medical conditions and conditions of confinement as to the following defendants survive the motions to dismiss: Defendants Stevens, Davidson, Cortez, Hunter, Swaney, Riojas, Ortiz, Henderson, Martinez, and Orr only. Although Warden Stevens has argued that Taylor has failed to allege any personal involvement on his part in regard to any claim in his complaint and that *respondeat superior* is inapplicable, the court should nonetheless find that Taylor has stated a plausible claim against Stevens. Although a

supervisor may not be held liable for the actions of his or her subordinates, supervisory liability may exist if the supervisor implemented a policy or allowed a widespread practice that was so common that it constituted a policy, or if he or she failed to properly train or supervise subordinates and there is a causal link between such failure and the violation that it amounts to deliberate indifference. *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). Taylor alleges that Warden Stevens failed to properly train officers and that his failure to do so resulted in a violation of his constitutional rights. He also alleges that Warden Stevens was made aware of the cell conditions and knew of the conditions but did not take measures to correct officer misconduct and/or encouraged the continuation of such conduct. Compl. 12–13.

Although Taylor has implicated other Defendants in regard to his deliberate indifference claims, his allegations do not demonstrate that any of them had subjective knowledge of the length of time he remained in the cells or the specific conditions in the cells or the physical pain he alleges he endured.

### *Excessive Use of Force Claim*

Taylor claims Defendant Olmstead assaulted him on October 14 without justification or provocation. He specifically claims that he and Olmstead began arguing when she was at his cell to pick up his food tray and that she ran the steel bar forward and hit him in the testicles and then grinned. He further claims that she refused to provide dinner to him that evening. He claimed in his Complaint and at the *Spears* hearing that he was transported to the emergency room a couple of hours later where Defendant Carpenter prescribed an ice pack that he was to use for twenty-four hours as well as a three-day prescription of ibuprofen. He claims that he sustained a permanent injury to his right testicle from the assault and specifically claims that he still suffers pain with urination and ejaculation.

Although an allegation of a single missed meal is insufficient to state a claim upon which relief can be granted, allegations of force such as those Taylor asserts do. The Eighth Amendment proscribes the unnecessary and wanton infliction of pain, which includes an action that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In order to state an Eighth Amendment claim, a prisoner must allege an injury that resulted directly from an objectively unreasonable use of force that was clearly excessive to the need. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). In all cases, the core judicial inquiry is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation omitted). Based on Taylor's allegations, his claims against Defendant Olmstead survive her motion to dismiss.

B. *Claims that should be dismissed pursuant to Rule 12(b)(6)*

Taylor's claims, insofar as he asserts them for the purpose of seeking injunctive relief, should be dismissed for failure to state a claim upon which relief can be granted; Taylor was transferred from the Montford Unit on November 5, 2013, Compl. 31, and the transfer mooted any claim for injunctive relief. *See Oliver,* 276 F.3d at 741 ("The transfer of a prisoner out of an institution often will render his claims for injunctive relief moot."); *see also Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that prisoner's transfer from Lubbock County Jail rendered moot the plaintiff's request for injunctive relief).

Taylor also alleges that his due process rights were violated as a result of his continued confinement as a psychiatric patient at the Montford Unit without his consent. Taylor has failed to state a claim upon which relief can be granted. In regard to forced psychiatric treatment, the United

States Supreme Court has implicitly held that an inmate is entitled to substantive and procedural processes before he is forcibly medicated with psychiatric medication. *Washington v. Harper*, 494 U.S. 210, 236 (1990). In this case, Taylor complains about his confinement at the Montford Unit, but he does not allege that he was forcibly medicated. To the extent Taylor believes his consent was required for his assignment and confinement at the Montford Unit, he does not have a constitutional right to be housed in any particular prison unit. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) (the discretion to transfer a prisoner to a particular prison unit lies within the discretion of prison officials).

Other claims include Taylor's contention that certain Defendants sexually harassed him by leaving his genitals exposed to members of the opposite sex and other inmates when he was catheterized and contends that they did so for the purpose of humiliating him. Isolated incidents of sexual harassment and touching are not sufficiently serious enough to constitute a constitutional claim. *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997).

Taylor also complains that certain legal mail was opened outside of his presence; however, he has not alleged that he suffered prejudice in any case pending before a court of law as a result and has therefore failed to state a claim upon which relief can be granted. *See Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1995) (holding that plaintiff was required to show that his position as a litigant was prejudiced as the result of mail tampering). Taylor further complains that he was not allowed to write grievances. However, there is no constitutional right to file grievances; the primary purpose of a prison's grievance system is to alert and provide prison administration with a fair opportunity to address problems that may later form the basis of a lawsuit. *See Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) (discussing purpose of grievances in context of the exhaustion requirements set forth in 42 U.S.C. § 1997e(a)).

Finally, Taylor's claims of conspiracy, harassment, and retaliation should not survive Defendants' motions to dismiss. Taylor has set forth vague and general allegations but has not alleged facts that would form the basis of claims upon which relief can be granted. As noted above, a plaintiff's allegations must contain sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544 at 570.

## V. Recommendations

Based on the discussion in this Report and Recommendation, the undersigned recommends that the district judge find that Taylor's allegations survive the motions to dismiss filed on behalf of: Stevens, Davidson, Cortez, Hunter, Swaney, Riojas, Ortiz, Henderson, Martinez, Orr, and Olmstead only. The undersigned further recommends that the district judge dismiss all other claims against all other Defendants on the ground that Taylor has not stated claims upon which relief can be granted as to those individuals.

The undersigned further recommends that the district judge grant the motion to file advisory information under seal, see ECF No. 44, and deny without prejudice Taylor's motion for immediate injunctive relief in which he asks the court to require prison officials to supply him with paper for legal purposes. *See* ECF No. 47.

## VI. Right To Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2015); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination

is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    Dated: January 22, 2016.

                                      NANCY M. KOENIG
                                      United States Magistrate Judge