IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TRENT TAYLOR,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL MCDONALD, et al.,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:14-CV-00149 |

**DEFENDANTS McDONALD, MANKINS, WOOODALL, DAVIS, O'DONNELL, NOBLE AND KHANDHERIA'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

K<small>EN</small> P<small>AXTON</small>
Attorney General of Texas

J<small>EFFREY</small> C. M<small>ATEER</small>
First Assistant Attorney General

B<small>RANTLEY</small> S<small>TARR</small>
Deputy First Assistant
Attorney General

J<small>AMES</small> E. D<small>AVIS</small>
Deputy Attorney General
for Civil Litigation

L<small>ACEY</small> E. M<small>ASE</small>
Chief, Law Enforcement
Defense Division

CHRISTOPHER LINDSEY\*
Assistant Attorney General
O<small>FFICE OF THE</small> A<small>TTORNEY</small>
G<small>ENERAL</small>
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2080
Fax: (512) 457-4658
Counsel for Defendant

**ATTORNEYS FOR DEFENDANTS**

**\* Counsel of Record**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

I.    STATEMENT OF THE CASE ................................................................................... 1

II.   UNDISPUTED MATERIAL FACTS ......................................................................... 1

III.  BRIEF IN SUPPORT ARGUMENT .......................................................................... 3

    A. Summary Judgment Standard .................................................................... 3

    B. Qualified Immunity ...................................................................................... 4

        1. Standard ................................................................................................. 4
        2. Plaintiff has Failed to State a Claim that Invokes Due Process ........ 5
           a. Plaintiff voluntary admission waived any due process claims under *Vitek*. 5
             Exhibit A:   Plaintiff Relevant Medical Record Excerpts, TDCJ Health Services Archives, with business records affidavit (Bates numbered 1-267) ........................................................................................................ 6
             Exhibit B:   Affidavit of Barbara Beadle, M.D. ............................................. 6
             Exhibit C:   Correctional Managed Health Care Policy No. I-70.2 ............. 6

           b. Plaintiff was not Subjected to any Compelled Treatment .......................... 10
           c. Plaintiff's Incarceration at the Montford Unit does not Rise to the Level of Atypical and Significant Hardship ............................................................ 10
           d. Placement in a suicide cell is not an Atypical and Significant Hardship ...11

IV.   Defendants are Entitled to Qualified Immunity ......................................................... 13

V.    CONCLUSION ............................................................................................................ 14

VI.   PRAYER ...................................................................................................................... 14

NOTICE OF ELECTRONIC FILING ................................................................................... 16

CERTIFICATE OF SERVICE ............................................................................................... 16

## TABLE OF AUTHORITIES

*Cases*

*Anderson v. Banks*, 06–CV–0625 (GLS/DRH),
  2008 WL 3285917 (N.D.N.Y. Aug. 7, 2008) ............................................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................................... 3

*Anderson v. Creighton*,
  483 U.S. 640 ............................................................................................................................ 13

*Arce v. Walker*,
  139 F.3d 329 (2d Cir.1998) ...................................................................................................... 11

*Cabassa v. Gummerson*
  No. 9:01-CV-1030, 2008 U.S. Dist. WL 4416411 (N.D. N.Y. September 24, 2080) ..............12

*Colon v. Howard*,
  215 F.3d 227 (2d Cir.2000) ...................................................................................................... 11

*Gay v. Turner*,
  994 F.2d 425 (8th Cir.1993) ..................................................................................................... 12

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ................................................................................................................... 4

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ................................................................................................................. 13

*Jefferson v. Helling*,
  324 Fed. Appx. 612 (9th Cir.2009) ........................................................................................... 12

*Kovacic v. Villarreal*,
  628 F.3d 209 (5th Cir. 2010) ..................................................................................................... 4

*Lampkin v. City of Nacogdoches*,
  7 F.3d 430 (5th Cir.1993) ........................................................................................................ 13

*Matiyn v. Henderson*,
  841 F.2d 31 (2d Cir.1988) ........................................................................................................ 11

*McClendon v. City of Columbia*,

    305 F.3d 314 (5th Cir. 2002) .................................................................................................. 4

*Montanye v. Haymes*,
    427 U.S. 236 (1976) ............................................................................................................ 10

*Nwaokocha v. Sadowshi*,
    369 F.Supp.2d 362 (E.D.N.Y.2005) .................................................................................... 12

*Pearson v. Callahan.*,
    129 S.Ct. 808 (2009) .......................................................................................................... 4,5

*Perry v. McDonald*,
    280 F.3d 159 (2d Cir.2001) ................................................................................................. 10

*Rogers v. Paquet*,
    201 WL 1148256 (N.D. Tex. Sept. 18, 2001) ..................................................................... 11

*Sandin v. Conner*,
    515 U.S. 472 (1995) ............................................................................................................ 11

*Saucier v. Katz.*,
    533 U.S. 194 (2001) .............................................................................................................. 4

*Sealey v. Giltner*,
    197 F.3d 578 (2d Cir.1999) ................................................................................................. 11

*Shipp v. McMahon*,
    234 F.3d 907 (5th Cir.2000) ................................................................................................ 13

*Speaks v. Trikora Lloyd P.T.*,
    838 F.2d 1436 (5th Cir. 1988) .............................................................................................. 4

*Vitek v. Jones*,
    445 U.S. 480 (1980) .......................................................................................................... 5,10

*Young v. Wainwright*,
    449 F.2d. 338 (5th Cir. 1971) .............................................................................................. 11

**Statutes**

42 U.S.C. (1983) ........................................................................................................................ 4,5

**Rules**

Federal Rule of Civil Procedure 56(c) ..................................................................................... 5, 8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TRENT TAYLOR,<br>　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 5:14-CV-00149 |
| MICHAEL MCDONALD, et al.,<br>　　　Defendants. | §<br>§<br>§ | JURY |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants McDonald, Mankins, Woodall, Davis, O'Donnell, Noble, and Kandheria assert there are no genuine issues of material fact for trial and request that this Court grant summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56(c). In support of their motion, Defendants rely upon the following:

**Exhibit A: Plaintiff's Relevant Medical Record Excerpts, TDCJ Health Services Archives, with business records affidavit (Bates numbered 1-267);**

**Exhibit B: Affidavit of Barbara Beadle, M.D.;**

**Exhibit C: Correctional Managed Health Care Policy No. I-70.2**

## I.　STATEMENT OF THE CASE

Plaintiff brings this suit pursuant to 42 U.S.C. ' 1983. Plaintiff alleges that Defendants Michael McDonald, Opal Mankins, Janis Woodall, Kim Davis, Sean O'Donnell, Marilyn Noble, and Priya Kandheria, unlawfully placed him at the Montford Unit and forced him to stay at the facility in violation of his constitutional rights. Plaintiff seeks monetary and injunctive relief.

1

## II.      UNDISPUTED MATERIAL FACTS

1. Plaintiff was an inmate of the Texas Department of Criminal Justice (TDCJ) at all times relevant to this case.

2. Plaintiff was incarcerated at the John T. Montford Unit in Lubbock, Texas, at all times relevant to this case.

3. The Montford Unit, operated by the Texas Department of Criminal Justice (TDCJ), is a Regional Medical Facility treating offenders for both general and mental health.

4. Defendant Khandheria is a licensed psychiatrist, and was employed by the Texas Tech University Health Sciences Center (TTUHSC) at all times relevant to this case.

5. Defendant O'Donnell was a psychologist, and was employed by TTUHSC at all times relevant to this case.

6. Defendants Noble and McDonald are licensed physician assistants, and were employed as mid-level psychiatric providers by TTUHSC at all times relevant to this case.

7. Defendant Mankins was a registered nurse, and was employed by TTUHSC at all times relevant to this case.

8. Defendant Janis Woodall was a licensed clinical social worker and was employed by TTUHSC at all time relevant to this case.

9. Defendants Jones and Davis are licensed vocational nurses, and were employed by TTUHSC at all times relevant to this case.

10. On September 4, 2013, while living at the Robertson Unit in Abilene, Texas, Plaintiff ingested multiple drugs including a number of Lortab pills, an opiate typically used for treatment of pain.

11. Plaintiff was admitted to the Hendrick Medical Center in Abilene with a diagnosis of a drug overdose.

12. On September 6, 2013, Plaintiff was discharged from Hendrick Medical Center and returned to the Robertson Unit.

13. Upon returning to Robertson, Plaintiff was assessed by medical staff. He was diagnosed with emergent needs and transferred to crisis management.

14. On September 6, 2013, Plaintiff self-admitted to the Montford Unit by signing a consent to treatment form.

15. Plaintiff was placed on suicide watch.

16. On September 9, 2013, Plaintiff was examined by Physician Assistant McDonald and again signed a consent to treatment form.

17. On October 12, 2013, Plaintiff signed a refusal of treatment form.

18. On October 21, 2013, Plaintiff signed another refusal of treatment or services form.

19. Plaintiff was never forcibly medicated or forced to undergo any therapy of any type.

20. On November 5, 2013, Plaintiff was transferred back to the Robertson Unit.

## III. BRIEF IN SUPPORT ARGUMENT

### A. Summary Judgment Standard

Rule 56(c) provides that summary judgment shall be rendered if there is no genuine issue as to any material fact and ... the moving party is entitled to summary judgment as a matter of law. Federal Rule of Civil Procedure 56(c), by its very terms, permits summary judgment even if the parties disagree as to some facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment is precluded only if the disputed facts might affect the outcome of the suit under governing law, and if the dispute is genuine. *Id.* at 248. A dispute is genuine only if the evidence is such that a reasonable

jury could return a verdict for the non-moving party. *Id.* The district court should grant summary judgment when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988).

**B.     Qualified Immunity**

   **1.     Standard**

As state officials, Defendants McDonald, Mankins, Woodall, Davis, O'Donnell, Noble and Kandheria are entitled to qualified immunity for claims against them in their individual capacity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar his recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

In evaluating claims under § 1983, the Supreme Court mandated that courts employ a two-step sequence in evaluating whether government officials are entitled to qualified immunity claims in *Saucier v. Katz. Saucier v. Katz,* 533 U.S. 194 (2001). First, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* With respect to the second step, the Fifth Circuit has held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The Supreme Court revisited the *Saucier* analysis in *Pearson v. Callahan*. The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Pearson v. Callahan*. 129 S.Ct. 808 (2009). The

4

Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Id.* Thus, either prong may be taken up first. Plaintiff has failed to create a fact question over whether Defendants= conduct violated Plaintiff=s constitutional rights or whether Defendants= conduct was objectively unreasonable. As shown below, Defendants McDonald, Mankins, Woodall, Davis, O'Donnell, Noble, and Kandheria are entitled to qualified immunity and a dismissal of the 42 U.S.C. § 1983 allegations against them.

    **2.    Plaintiff has Failed to State a Claim that Invokes Due Process.**

        **a.    Plaintiff's voluntary admission waived any due process claims under *Vitek*.**

This matter was remanded to consider Defendants' claims of qualified immunity in light of *Vitek v. Jones*, 445 U.S. 210 236(1980). The *Vitek* Court addressed whether the involuntary admission to a mental hospital coupled with compelled psychiatric treatment of a convicted felon, implicated due process concerns. The court ruled that such a transfer implicates due process protections because the "stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, *coupled* with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id* at 494. Those facts are not present in this case. The summary judgment evidence, including Plaintiff's original complaint, shows that Plaintiff consented to admission to the Montford facility and was not subjected to any involuntary psychiatric treatment. (Dkt No. 1 at 18). As a result of his voluntary admission, coupled with the lack of any compulsory behavior modification treatment, Taylor has waived any claim of a due process violation under *Vitek*.

Correctional Managed Health Care has implemented policies which conform to *Vitek's* guidance. Correctional Managed Health Care Policy No. I-70.2 generally governs the right of Texas inmates to refuse medical or psychiatric treatment, and the State's right to compel it. Exhibit C.

5

Defendants note that Plaintiff's claims do not include any constitutional challenge to the validity of these policies. (Dkt No. 1)

Defendants assert that the competent summary judgment evidence attached to this motion conclusively negates any genuine issue of material fact as to whether they acted in accordance with the Due Process Clause of the Fourteenth Amendment and the applicable Texas policies and procedures governing admission to a medical facility after a suicide attempt. Attached as exhibits are Plaintiff's relevant medical records;[1] the expert affidavit of Barbara Beadles, Regional Medical Health Director for TTUHSC;[2] and Correctional Managed Health Care Policy No. I-70.2.[3]

Plaintiff was voluntarily admitted to the Montford Unit on September 6, 2013. Exhibit A at 21, 245; Exhibit B. On September 4, 2013, while living at the Robertson Unit, Plaintiff ingested an unknown amount of different medications, including Lortab and other foreign substances such as chewing tobacco. Exhibit A at 34-35, 54-60. Plaintiff was taken to a free world hospital, the Hendrick Medical Center for emergency treatment. Plaintiff was admitted to Hendrick's for two days and returned to the Robertson Unit. Upon returning to the Robertson Unit, Plaintiff refused to cooperate with the mental health providers at the facility. Exhibit A at 365-67. As a result of this behavior he was transferred to the John T. Montford Unit for appropriate evaluation.

The John T. Montford Unit is a regional medical facility that provides mental health treatment and medical treatment, including inpatient and outpatient surgical care. Much of the offender population at the Montford Unit is assigned to the unit for reasons other than psychiatric treatment. Exhibit B. Inmates who are admitted to psychiatric inpatient treatment at the Montford Unit are admitted by order of a psychiatrist or mid-level psychiatric provider. *Id.* An inmate may then consent

---

[1] Exhibit A.
[2] Exhibit B.
[3] Exhibit C.

to admission by signing a 'Voluntary Approval of Admission to an Inpatient Mental Health Facility' form. The form is the standard form used in all TDCJ facilities and indicates an inmate's consent. *Id.*

Plaintiff signed this form on September 6, 2013, and was admitted to the unit's crisis management section. *Id.* and Exhibit A at 21, 245. Inmates in the crisis management section are placed in a cell that has a wash basin, commode, and bed. They are constantly observed under a suicide precaution plan and, per provider order, receive only sack meals and are provided only a suicide blanket. *Id.* On September 9, 2013, while in crisis management, Plaintiff informed Physicians assistant McDonald that "that he wanted to change his life and he hoped staff at the Montford Unit would help him do that." Exhibit A at 236.

On September 10, 2013, medical staff recommended that TDCJ staff move Plaintiff from crisis management, contingent upon bed availability. Exhibit B. On September 11, Plaintiff informed nursing staff that he would become suicidal if he was forced to move to another cell. Exhibit A at 232. Due to these signs of suicidal ideation, Plaintiff was placed in a seclusion cell. Exhibit B. A seclusion cell is devoid of a wash basin, commode, and bed, and any other structure or material an inmate might use for self-harm. An inmate confined in a seclusion cell is observed under a suicide precaution plan. Placement in seclusion requires an order from a psychiatrist or mid-level psychiatric provider, in this instance physician's assistant McDonald placed Plaintiff on this plan. Exhibit B. On September 13, 2013, when staff attempted to move Plaintiff from the seclusion cell, he stated again that he would become suicidal if moved. He was therefore kept in a seclusion cell for observation on suicide precaution. Exhibit A at 210.

7

A committee, sometimes referred to as the "Warden's Committee," consisting of both clinicians and security staff, met weekly at the Montford Unit during this time. This interdisciplinary committee would address patient/offender management concerns, including inmate cell assignments. Exhibit B. On September 17, 2013, the committee determined that Plaintiff was eligible for transfer to a cell on A1-3 Row. *Id.* This housing provided specialized monitoring intended to reduce the likelihood of Plaintiff's threatened self-harm behavior such as he had previously demonstrated. Unlike the seclusion cells discussed above, the cells on A1-3 Row were single occupant cells equipped with a wash basin, commode, and bed. Offenders on this row were provided sack meals, a suicide blanket and were monitored under 'close observation.' Staff are required to visually observe an offender under close observation at regular intervals. *Id.*

On September 24, 2013, Dr. Priya Khandheria was informed by Plaintiff, that he was not suicidal and wanted to be moved off A1-3 Row. Khandheria also noted that Plaintiff stated he ingested the medication at the Robertson Unit so that staff would not find contraband during a security check. Exhibit A at 144. Dr. Khandheria recommended Plaintiff be moved from A1-3 Row. *Id.* On October 1, 2013, Physician's Assistant McDonald recommended the same move. Exhibit B. On October 2, 2013, the Warden's Committee approved removing Plaintiff from A1-3 Row. Plaintiff was removed from A1-3 Row three days later, but remained celled under close observation until October 31, 2013. *Id.*

It is unclear from the medical records why Plaintiff remained under close observation despite being moved from A1-3 Row, however, Plaintiff had a documented history of self-harm from an overdose attempt, and had threatened to commit suicide on more than one occasion. In order to determine the suicide potential of certain inmates, it is sometimes necessary to place the inmate under

8

close observation for a period of time in order to ensure the inmate's safety and for preservation of life. *Id.*

Although medical staff can order an inmate to be confined in seclusion under 'suicide watch', they do not have the authority to order an offender's transfer from a particular cell or from a particular unit. These moves are a function of security and TDCJ. *Id.* An inmate's cell assignment is not a means of treatment; rather, it is a security measure. Despite the assignment to A1-3 Row, Plaintiff's classification as a close observation inmate, and his confinement at the Montford Unit, treatment was never imposed upon Plaintiff. Plaintiff was never forcibly medicated or forced to undergo any type of therapy, from the time of his admission on September 6, 2013, until his transfer from the unit on November 5, 2013. Exhibits A and B.

On October 31, 2013, Dr. Allan Hanretta assessed Plaintiff and noted euthymic mood and affect that was reactive with normal range and intensity. Exhibit A at 92. Plaintiff told Dr. Hanretta that he had not overdosed on the medication at the Robertson Unit for the purposes of committing suicide, he did it to avoid security staff finding the medication he had in his cell. *Id.* He feared that discovery of the medication would result in additional time to his sentence. *Id.* He also told Dr. Hanretta that he was not depressed and did not experience psychotic symptoms. *Id.* He stated that he regretted the overdose and was glad to be alive, he denied suicidal and homicidal ideations, and he agreed to immediately seek help if he developed thoughts of self-harm. *Id.* Dr. Hanretta determined that Plaintiff was stable and was no longer in need of psychiatric oversight. *Id.* Five days later, on November 5, 2013, Plaintiff was transferred back to the Robertson Unit. Exhibit B. The logistics of an offender transfer between facilities are dependent upon a myriad of factors, including transportation and bed availability. *Id.* Such decisions and concerns are solely within the discretion

and control of TDCJ staff.  TTUHSC-CMHC staff do not control an inmate's discharge from a particular unit or transfer to a particular unit. *Id.*

      **b.**      **Plaintiff was not Subjected to any Compelled Treatment**

The *Vitek* court held the "stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, *coupled with the subjection of the prisoner to mandatory behavior modification* as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id* at 494.(emphasis added)   Again, the summary judgment evidence demonstrates that Plaintiff cannot meet an essential element of his claim.  At no time during his incarceration at the Montford facility was Plaintiff subjected to any forced behavioral or psychiatric treatment. *Id.*

The medical records and the affidavit of Dr. Beadle indicate that Plaintiff was never forced to undergo any treatment at all, except direct observation.   This is a housing status and a security status to ensure an offender or patient does not have the means for self-harm, it is not a treatment or the type behavior modification that would trigger the due process protections provided by *Vitek*.  Plaintiff has again failed to meet an essential element of his claim under *Vitek* and his claims should be dismissed.

      **c.**      **Plaintiff's Incarceration at the Montford Unit does not Rise to the Level of Atypical and Significant Hardship.**

Plaintiff's claims that his attempts to refuse treatment were not honored appear to be related solely to his frustration with the conditions of confinement in his seclusion cell.  Such claims fall under a *Sandin* rather than *Vitek* analysis.

To establish a claim based on a violation of due process, a plaintiff must establish a constitutionally protected liberty or property interest that a plaintiff was denied without due process. *See, e.g.*, *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir.2001). A state prisoner generally has no liberty interest in being housed in a particular facility. *Montanye v. Haymes*, 427 U.S. 236, 243

10

(1976); *Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.1988). "[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir.1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Atypicality in a *Sandin* inquiry is normally a question of law. *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); Sealey, 197 F.3d at 585. When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey*, 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335–36 (2d Cir.1998).   Courts have found the following facts and situations are not atypical and significant hardships when taken in context with the situations faced by corrections officials.

### d.     Placement in a suicide cell is not an atypical and significant hardship.

Placement in a single cell, even a suicide cell, does not by itself impose an atypical and significant hardship which would implicate due process concerns.   "The United States Supreme Court has narrowed a prisoner's liberty interest to "freedom from restraint which, not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483 (1995). The court in *Sandin* held that segregated confinement was not the type of atypical, significant deprivation which might rise to creation of a liberty interest. *Rogers v. Paquet*, 201 WL 1148256 (N.D. Tex. Sept. 18, 2001).

The Rogers court continued, "Moreover, inmates do not have a property or liberty interest in custodial classifications. Such classifications are generally within the broad discretion of the prison officials and courts are reluctant to interfere, except in extreme circumstances. *Id* at 3, citing *Young v.*

11

*Wainwright* 449 F.2d. 338, 339 (5th Cir. 1971).    Plaintiff's allegation that he was wrongfully placed on a suicide watch has no viable legal basis." *Id.*   Courts have also found that placement in a segregated portion of a correctional facility's infirmary are not an atypical and significant hardship.   This included 101 days confined to a prison hospital room, 24 hours a day, with no opportunities to recreate, or interact with other offenders. *Cabassa v. Gummerson*, No. 9:01-CV-1039, 2008 U.S. Dist. WL 4416411(N.D. N.Y. September 24, 2008), 10.  *See also , e.g., Gay v. Turner,* 994 F.2d 425, 427 (8th Cir.1993) (five temporary transfers to the mental health unit for evaluation did not implicate Due Process Clause); *Jefferson v. Helling,* 324 Fed. Appx. 612, 613 (9th Cir.2009) (Plaintiff's emergency transfer to, and short-term detention in a prison's mental health unit did not entitle inmate to a prior hearing); *Anderson v. Banks,* 06–CV–0625 (GLS/DRH), 2008 WL 3285917, at *7–8 (N.D.N.Y. Aug. 7, 2008) (Transfer of inmate to mental health unit for monitoring and observation for three days was justified and did not constitute an undue hardship given plaintiff's mental health history and current symptoms); *Nwaokocha v. Sadowshi,* 369 F.Supp.2d 362, 373–74 (E.D.N.Y.2005) (Finding that, where a prisoner is mentally ill and displaying "significant warning signs" of an altered mental state, "time of segregation on a justified suicide watch" falls within the purview of discretionary confinement decisions made by the corrections department and normally expected by a prisoner, implicating no liberty interest).

The evidence conclusively demonstrates that Plaintiff did not suffer any atypical and significant hardship which would implicate due process concerns while at the Montford Regional Medical Facility.  The summary judgment evidence of Plaintiff's actions before arrival at the Montford facility, coupled with his conduct while living there, were ample justification to keep Plaintiff on the facility for sixty-one days.   Plaintiff has not pled or provided evidence of any action by

12

Defendants McDonald, Mankins, Woodall, Davis, O'Donnell, Noble or Kandheria which falls outside of clearly established law or accepted standards of care. His claims must therefore fail.

### IV. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

As shown above, Plaintiff has failed to state facts that demonstrate a constitutional violation by Defendants in their individual capacity. In addition, Plaintiff has failed to allege any facts which demonstrate that their actions were unreasonable in light of clearly established law. Plaintiff has the burden to allege and prove that no reasonable, similarly situated, official could have considered the conduct of the government officials to be unlawful, under the circumstances known to him at the time. *Anderson,* 483 U.S. 640. This does not require proof that the specific conduct in question has been held unlawful in "fundamentally similar" or "materially similar" cases. This determination must be made in light of Fifth Circuit and Supreme Court precedent. *Shipp v. McMahon,* 234 F.3d 907, 915 (5th Cir.2000), *cert. denied,* 532 U.S. 1052 (2001). Even if the individual Defendant erred in his actions, he is entitled to the defense of qualified immunity "if his decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.1993) (per curiam) (*citing Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). The summary judgment evidence demonstrates that Plaintiff spent a total of 61 days at the Montford Facility after ingesting an overdose amount of unknown medications. He refused to cooperate with staff at the Robertson Unit, and it continued after he was admitted to Montford. All care and precautions taken by the TTUHSC staff towards Plaintiff were taken in light of his conduct and his medical condition(s) at the time the decision was made.

Because Plaintiff has failed to allege a constitutional violation by these Defendants and failed to allege that their conduct was unreasonable, Defendants are entitled to qualified immunity and a dismissal of the claims against them.

13

## V.    CONCLUSION

Given the competent summary judgment evidence, Plaintiff lacks a cognizable factual basis for his constitutional claims, and has therefore failed to meet the first element of the qualified immunity analysis. Plaintiff has also failed to provide any evidence that Defendants' actions were objectively unreasonable. Defendants are therefore entitled to qualified immunity as to all claims, and this case should be dismissed.

## VII.   PRAYER

Defendants respectfully request that this Court grant their motion for summary judgment and dismiss all claims against Defendants with prejudice.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFERY C. MATEER**
First Assistant Attorney General

**BRANTLEY STARR**
Deputy First Assistant Attorney General

**JAMES E. DAVIS**
Deputy Attorney General for Civil Litigation

**LACEY E. MASE**
Division Chief
Law Enforcement Defense Division

/s/ CHRISTOPHER LEE LINDSEY
**CHRISTOPHER LEE LINDSEY**
Assistant Attorney General
Attorney-In-Charge
State Bar No. 24065628
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 (Phone No.)
(512) 495-9139 (Fax No.)

**ATTORNEY FOR DEFENDANTS MICHAEL MCDONALD, OPAL MANKINS, JANIS WOODALL, KIM DAVIS, SEAN O'DONNELL, MARILYN NOBLE, AND PRIYA KANDHERIA**

## NOTICE OF ELECTRONIC FILING

I, **CHRISTOPHER LEE LINDSEY**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of the foregoing in accordance with the Electronic Case Files system of the Northern District of Texas, on this the 13th day of March, 2018.

/s/ CHRISTOPHER LEE LINDSEY
**CHRISTOPHER LEE LINDSEY**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **CHRISTOPHER LEE LINDSEY**, Assistant Attorney General, do hereby certify that a true and correct copy of the foregoing has been served by placing the same in the United States Postal Service, postage prepaid, on this the 13th day of March, 2018, addressed to:

Trent Taylor, No. 01691384
TDCJ – Connallly Unit
899 FM 632
Kenedy, TX 78119
**Plaintiff Pro Se**

/s/CHRISTOPHER LEE LINDSEY
**CHRISTOPHER LEE LINDSEY**
Assistant Attorney General

16