IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION



| | | |
|---|---|---|
| TRENT TAYLOR, | § | |
| Institutional ID No. 1691384, | § | |
| SID NO. 6167597, | § | |
| Previous TDCJ No. 1366391, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 5:14-CV-149-C |
| | § | USCA No. 16-10498 |
| MICHAEL MCDONALD, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### ORDER

Before the Court are the following:

(1) Defendant Shawn Vallance's Brief in Support of his Motion for Summary Judgment filed on March 13, 2018;

(2) Defendants McDonald, Mankins, Woodall, Davis, O'Donell, Noble, and Khanderia's Brief in Support of Their Motion for Summary Judgment filed on March 13, 2018; and

(3) "Plaintiff's Motion in Opposition to Defendants [sic] Motion for Summary Judgment" filed on April 2, 2018.

Having considered the foregoing, the Court is of the opinion that Defendants' motions[1] should be **GRANTED**, and Plaintiff's Motion in Opposition should be **DENIED**.

### I. BACKGROUND

On November 3, 2017, the United States Court of Appeals for the Fifth Circuit partially vacated the Order and Judgment dismissing Plaintiff's individual capacity claims that Defendants

---

[1] The Court notes that while Defendants Briefs purport to be in support of Motions for Summary Judgment, the record does not reflect that a separate motion was actually filed pursuant to L.R. 56.5. Nevertheless, the Court construes the briefs as motions for summary judgment in this case for docket management purposes.

Michael McDonald, Shawn Vallance, Opal Mankins, Janis Woodall, Kim Davis, Sean O'Donell, Marilyn Noble, and Priya Kandheria, as members of a so-called "warden's committee," denied Plaintiff's right to procedural due process when his confinement and psychiatric treatment at the Montford Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) continued after he withdrew his consent. The Fifth Circuit further found:

> In addressing Taylor's claim of forced psychiatric treatment in violation of due process, the district court relied on *Washington v. Harper*, 494 U.S. 210, 236 (1990), and *Meachum v. Fano*, 427 U.S. 215, 225 (1976) in concluding that Taylor had not stated a claim against McDonald, Vallance, Mankins, Woodall, Davis, O'Donell, Noble, and Kandheria. Finding no claim for a constitutional violation, the district court terminated its qualified immunity inquiry. *See Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). **However, Taylor's allegations are sufficient to state a claim that warrants further consideration in light of *Vitek v. Jones*, 445 U.S. 480, 493-95 (1980). We remand to the district court to consider, in the first instance, these defendants' contentions that they are entitled to qualified immunity.** The judgment is VACATED as to this claim and REMANDED for further development.

*Taylor v. Williams, et al.*, No. 16-10498, slip op. at 7 (5th Cir. Nov. 3, 2017) (per curiam) (emphasis added). The motions now under consideration are the result of said remand.

### *Plaintiff's Allegations*

When Plaintiff was an inmate at the Robertson Unit of the TDCJ-CID in Abilene, Texas, he overdosed on an unknown number of pills, including Lortab (an opiate typically used for the treatment of pain) on September 4, 2013. After being treated and released from a local hospital, Plaintiff was assessed by Robertson Unit medical staff and he consented to be transferred to the Montford Unit for crisis management and placed on suicide watch. Plaintiff's due process claims arise from his allegation that, although he initially consented to be transferred to and treated at the Montford Unit, he withdrew his consent within days of his arrival and signed forms

withdrawing his consent multiple times over the course of his stay. Despite the withdrawing his consent, Plaintiff contends that Defendants continued to compel him to receive psychiatric treatment in the form of A1-3 row programs, continuous psychiatric exams and psycho-social evaluations. Plaintiff further alleges that Defendants ultimately classified him as mentally ill and kept him in the psychiatric facility at the Montford Unit with no hearing for 61 days. Plaintiff asserts that he signed the voluntary consent form with the belief that he could withdraw that consent at any time in accordance with TDCJ Policy.

## II. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendant Vallance moves for summary judgment on the grounds that (1) Plaintiff did not exhaust his administrative remedies; (2) Defendant Vallance is entitled to qualified immunity; (3) Plaintiff failed to state a due process claim; (4) Plaintiff's voluntary admission waived any due process claims under *Vitek*; (5) Plaintiff was not subjected to any compelled treatment; (6) Plaintiff's incarceration at the Montford Unit and/or placement in a suicide cell did not rise to the level of an atypical and significant hardship; and (7) Defendant Vallance was not personally involved in the incidents giving rise to Plaintiff's claims. In support of his motion, Defendant Vallance submitted the following summary judgment evidence:

1. Plaintiff's Grievance Records with Supporting Business Records Affidavit;
2. Plaintiff's Medical Records with Supporting Business Records Affidavit; and
3. Affidavit of Edward Pharr.

Defendants Michael McDonald, Opal Mankins, Janis Woodall, Kim Davis, Sean O'Donnell, Marilyn Noble, and Priya Kandheria move for summary judgment on the grounds that (1) Plaintiff has failed to state a claim that invokes due process; (2) Plaintiff's voluntary

admission waived any due process claims under *Vitek*; (3) Plaintiff was not subjected to any compelled treatment; (4) Plaintiff's incarceration in the Montford Unit and/or his placement in a suicide cell did not rise to the level of atypical and significant hardship; and (5) Defendants are entitled to qualified immunity. Defendants McDonald, Mankins, Woodall, Davis, O'Donell, Noble, and Khanderia submitted the following summary judgment evidence in support of their motion:

1. Plaintiff's Relevant Medical Records Excerpts with business records affidavit;
2. Affidavit of Barbara Beadle, M.D.; and
3. Correctional Managed Health Care Policy No. I-70.2.

### III. PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In his Motion in Opposition, Plaintiff argues that Defendants are not entitled to qualified immunity because they violated clearly established law when they forced him to continue to undergo psychiatric treatment after his withdrawal of consent. Plaintiff also restates his original claims and places special emphasis on his argument that Defendants have misrepresented the date he first withdrew his consent to treatment, which he asserts was September 13, 2013, and not October 12, 2013 – the date on which Defendants contend that he first signed a refusal of treatment form. In support of his motion, Plaintiff submitted the following summary judgment evidence:

1. Plaintiff's Medical Records with Supporting Business Records Affidavit;
2. TDCJ Correctional Managed Health Care Policies I-70.2 and I-71.1;
3. Affidavit of Edward Pharr;

    4.    Petitioner's Grievance Records with Supporting Business Records Affidavit; and

    5.    Plaintiff's Declaration in Opposition to Defendants' Motions for Summary Judgment.

## IV. STANDARDS

### *Summary Judgment*

Typically, the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, "[a] qualified immunity defense to § 1983 liability alters the usual summary judgment burden of proof; once an official pleads the defense of qualified immunity in a § 1983 action, the burden then shifts to the plaintiff." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see also Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."). Nonetheless, all of the evidence and reasonable inferences deduced therefrom are to be construed in a light most favorable to the nonmoving party. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009); *see also Brown*, 623 F.3d at 253 ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.").

### *Qualified Immunity*

The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Thompson v. Upshur*

*County, Tex.*, 245 F.3d 447, 456 (5th Cir. 2001). Qualified immunity should be the norm and, as the Supreme Court has stated, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

To support a claim of qualified immunity, a defendant must plead qualified immunity and demonstrate that he is a governmental official whose position involves the exercise of discretion. *Thompson*, 245 F.3d at 456. The burden then shifts to the plaintiff to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id.* Thus, the defendant is not required to demonstrate that he did not violate the clearly established rights of the plaintiff. *Id.*

Once properly pleaded, the Court must make a threshold determination whether a statutory or constitutional right of the Plaintiff would have been violated on the facts alleged. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). The Court must then determine whether the defendant official's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.*

The Court must determine whether the right was clearly established at the time of the incident in question. *Harlow*, 457 U.S. at 818; *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (holding that whether a right is clearly established is question of law for the court); *Thompson*, 245 F.3d at 456. "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640; *Thompson*, 245 F.3d at 457. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. *Anderson*, 483 U.S. at 640 (citing *Mitchell*, 472 U.S. at 535 n.12). Rather, the

unlawfulness must be apparent in light of pre-existing law. *See Malley*, 475 U.S. at 344–45. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. *Harlow*, 457 U.S. at 818.

A defendant's acts are held to be objectively reasonable unless all reasonable officials, acting under the circumstances presented to the defendant, would have then known that the defendant's conduct violated the Constitution or federal statute. *Anderson*, 483 U.S. at 640. The circumstances presented to the defendant include the facts known to the defendant at the time of the action. *Id.* at 641. But the subjective state of the defendant's mind has no bearing on whether the defendant is entitled to qualified immunity. *Anderson*, 483 U.S. at 641; *Thompson*, 245 F.3d at 456. "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver*, 410 F.3d at 750.

### *Vitek*

As previously explained, Plaintiff has alleged that Defendants violated his constitutional rights when they denied his right to procedural due process in relation to his decision to withdraw consent after he was voluntarily admitted to the Montford Unit for psychiatric evaluation. This Court previously found that Plaintiff failed to state a claim of forced psychiatric treatment in violation of due process pursuant to *Washington v. Harper*, 494 U.S. 210, 236 (1990) (an inmate is entitled to substantive and procedural due processes before he is forcibly medicated with psychiatric medication), and *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (the discretion to transfer a prisoner to a particular prison unit lies within the discretion of prison officials).

7

However, in remanding Plaintiff's claims of forced psychiatric treatment, the Fifth Circuit concluded that Plaintiff's claims warranted further consideration in light of *Vitek v. Jones*, 445 U.S. 480, 493-95 (1980).

In *Vitek*, the Supreme Court held that an inmate's liberty interests were triggered due to his transfer from a state prison to a mental hospital pursuant to a state statute. *Vitek v. Jones*, 445 U.S. 480, 488 (1980). The Court reasoned that "[t]he loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement," as commitment to a mental hospital "can engender adverse social consequences to the individual." *Id.* at 492 (internal quotation marks omitted). "[W]hether we label this phenomena 'stigma' or choose to call it something else ... we recognize that it can occur and that it can have a very significant impact on the individual." *Id.* at 492 (internal quotation marks omitted). The Court focused particularly on the "[c]ompelled treatment in the form of mandatory behavior modification programs" incumbent on the transfer. *Id.* According to the Court, diagnosing a prisoner with "a mental illness and ... subject[ing] him involuntarily to institutional care in a mental hospital" are consequences "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Id.* at 493. Thus, "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494. In *Vitek*, the Supreme Court approved the district court's formulation of robust procedural safeguards for prisoners facing involuntary commitment.

8

## V. DISCUSSION

As thoroughly briefed by Defendants, Plaintiff's case is distinguishable from *Vitek*. Critically, Plaintiff does not complain of a failure in procedural protection *prior to* his transfer to the Montford Unit, and his claim does not involve involuntary commitment to a psychiatric unit in the first instance. Further, Defendants note that at no time during his incarceration at the Montford Unit was Plaintiff subjected to any forced behavioral or psychiatric treatment. Indeed, it is undisputed that Plaintiff voluntarily agreed to be transferred to the Montford Unit following the overdose at the Robertson Unit. Instead, Plaintiff essentially contends that once he withdrew his consent, all treatment should have been immediately stopped and he should have been returned to his prior unit of confinement without delay; despite his previously expressions that he was suicidal. Additionally, Plaintiff asserts that he was subjected to compelled behavioral treatment in the form of continued observation and evaluations by Defendants following his withdrawal of consent. The competent summary judgment evidence indicates that he was placed under direct observation as a result of his prior claims of suicidal ideation. Contrary to Plaintiff's contention that the continued observation and evaluations amounted to "compelled behavioral treatment" under *Vitek*, the Fifth Circuit has held that "[p]erforming a psychiatric evaluation does not infringe any prisoner's constitutional rights." *Durham v. White*, 6 Fed. Appx. 396 (5th Cir. 2001). Consequently, the Court finds that the continued observation and evaluations of Defendant after consent was withdrawn does not constitute "compelled behavior modification" or "treatment," and therefore did not invoke the due process considerations of *Vitek*.

The Court is of the opinion that Plaintiff has failed to demonstrate any genuine issue of material fact as to whether these Defendants, as members of a so-called "warden's committee," denied Plaintiff's right to procedural due process when his confinement and psychiatric treatment at the Montford Unit continued for approximately two-months after he withdrew his consent.

The Court need not reach the second step of the qualified immunity analysis. However, the Court notes that even if Plaintiff had shown the violation of a clearly established right related to the his continued confinement in the Montford Unit following his withdrawal of consent, the Court would still grant qualified immunity on the basis that the Defendants' actions were objectively reasonable under the circumstances. Petitioner had overdosed on pills, failed to cooperate, and expressed suicidal thoughts to officials multiple times. Although he claims he only expressed those thoughts as a means to avoid being placed back in another cell, Defendants have demonstrated that their actions complied with TDCJ Policy (specifically Correctional Managed Health Care Policy No. I-70.2, generally governing the right of Texas inmates to refuse medical or psychiatric treatment, and the State's right to compel such treatment), and note that Plaintiff has not challenged the constitutional validity of said policy. The Court finds that Defendants were reasonable in continuing to observe and follow the policy that was ostensibly implemented to comply with *Vitek*.

## VII. CONCLUSION

After considering the pleadings and Defendants' Briefs in Support of their Motions for Summary Judgment, the Court finds that Defendants Shawn Vallance, Michael McDonald, Opal Mankins, Janis Woodall, Kim Davis, Sean O'Donnell, Marilyn Noble, and Priya Kandheria have correctly set forth the applicable law as it pertains to the facts of this case and supported their

arguments with competent summary judgment evidence. Further, Plaintiff has failed to provide evidence sufficient to deny the Defendants the defense of qualified immunity. Thus, for the reasons set forth herein and in Defendants' Briefs in Support of their Motions for Summary Judgment, the Court finds that Defendants Michael McDonald, Shawn Vallance, Opal Mankins, Janis Woodall, Kim Davis, Sean O'Donell, Marilyn Noble, and Priya Kandheria are entitled to qualified immunity with regard to Plaintiff's claim that he was subjected to forced psychiatric treatment in violation of due process during his two-month incarceration at the Montford Unit.

Defendants' motions for summary judgment are GRANTED and Plaintiff's complaints against them are DISMISSED with prejudice. Plaintiff should take nothing on his claims against Defendants.

SO ORDERED this 14th day of September, 2018.

SAM R. CUMMINGS
Senior United States District Judge