UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| TRENT TAYLOR, <br> Institutional ID No. 01691384, <br> SID No. 6167597, <br> Previous TDCJ ID No. 1366391, <br><br> Plaintiff, <br><br> v. <br><br> TEXAS DEPARTMENT OF CRIMINAL JUSTICE; ROBERT STEVENS; ROBERT ROJAS; RICARDO CORTEZ; STEPHEN HUNTER; LARRY DAVIDSON; SHANE SWANEY; FRANCO ORTIZ; JOE MARTINEZ; and CREASTOR HENDERSON <br><br> Defendants. | CIVIL ACTION NO. 5:14-CV-00149-C |

## FIRST AMENDED COMPLAINT

Plaintiff TRENT TAYLOR ("Plaintiff"), by and through his attorneys, ELLWANGER LAW LLLP, brings this action for damages and other legal and equitable relief from Defendants for violations of the Eighth Amendment to the US Constitution under 42 U.S.C. § 1983, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.  This is an action brought by Mr. Taylor against the prison officials at the John T. Montford Unit of the Texas Department of Criminal Justice that were responsible for the horrific and inhumane treatment and conditions he endured during his detention at that facility. As summarized by the US Supreme Court: "[F]or six full days in September 2013, correctional

officers confined him in a pair of shockingly unsanitary cells. The first cell was covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet. Fearing that his food and water would be contaminated, Taylor did not eat or drink for nearly four days. Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes. Taylor held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was left to sleep naked in sewage." *Taylor v. Riojas*, 141 S. Ct. 52, 208 L. Ed. 2d 164 (2020) (citations omitted). Mr. Taylor now seeks damages and injunctive relief under 42 U.S.C. § 1983 for these violations of his Eighth Amendment rights.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C.A§ 1983.

3. Venue is also proper in this Court pursuant to 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## **PARTIES**

4. Plaintiff Trent Taylor was incarcerated at the John T. Montford Unit during the events described in this complaint.

5. Defendant the Texas Department of Criminal Justice is the state agency responsible for overseeing the John T. Montford Unit.

6. Defendant Warden Robert Stevens was the Warden and primary policy maker for the John T. Montford Unit during the events described in this complaint.

7. Defendant Robert Rojas was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

8. Defendant Ricardo Cortez was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

9. Defendant Stephen Hunter was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

10. Defendant Larry Davidson was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

11. Defendant Shane Swaney was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

12. Defendant Franco Ortiz was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

13. Defendant Joe Martinez was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

14. Defendant Creastor Henderson was a TDCJ corrections officer at the Montford Unit at the time of the events described in this complaint.

15. All individual defendants are named in their official and individual capacities in this lawsuit.

16. All defendants and their staff have acted, and continue to act, under color of federal law and in violation of the U.S. Constitution.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. Plaintiff has made every effort to exhaust any remedies available to inmates.

18. Mr. Taylor has submitted internal complaints to the warden, all of which have been ignored or issued blanket denials.

19. For example, on September 19, 2013, Mr. Taylor requested to make a grievance and this request was ignored.

20. On September 27, 2013, Mr. Taylor again requested to make a written grievance and was ignored.

21. Throughout the treatment described in this complaint, Mr. Taylor made numerous complaints to officers and requests to make written grievances that were ignored and formed the basis for later retaliation.

## STATEMENT OF FACTS

22. Plaintiff is an inmate under custody of the Texas Department of Criminal Justice.

23. Following Plaintiff's alleged suicide attempt, Defendants Officers Larry Davidson, Stephen Hunter, and Ricardo Cortez transported Plaintiff to Montford, a psychiatric unit, to undergo mental health treatment.

24. Rather than providing Plaintiff with treatment, for several days between September 6, 2013, and September 14, 2013, Defendants confined Plaintiff to prison cells with unconstitutionally unsanitary conditions.

25. Defendants Davidson, Hunter, and Cortez stripped Plaintiff of all his clothing and shut him in a cell in which almost every surface—including the floor, walls, windows, and ceiling—were covered in layers of human feces belonging to previous occupants of the cell. The smell was so foul that it could be detected from down the hallway.

26. Plaintiff was unable to eat in his cell out of fear that his food would become contaminated with feces. Feces was also packed inside the water faucet, which prevented Plaintiff from drinking water for days.

27. Defendants were fully aware that Plaintiff's cell was covered in feces from top to bottom. When Defendant Cortez asked, "Isn't this the cell that has shit all over it?", another Defendant replied, "Yes, he's going to have a long weekend," while the other Defendants laughed.

28. Plaintiff repeatedly asked prison staff members, including Officer Jennifer Mares, Officer Young, and Officer Maria Reyna, to clean his cell. Every staff member refused his requests.

29. When Plaintiff complained to Defendant Sergeant Shane Swaney about the conditions of his cell, he responded, "Dude, this is Montford. There is shit in all these cells from years of psych patients." Defendant Swaney told Plaintiff the only way he would be moved is if he threatened to harm himself. Plaintiff stated that he did not want to hurt himself but would do anything he could to be moved back to his old cell. Defendant Swaney responded, "You are a chicken shit, and you'd better never ask me for any type of help."

30. After spending four days in his feces-ridden cell, Plaintiff was transferred to a different "seclusion cell." Inmates at Montford referred to this particular cell as "the cold room" because of its almost freezing temperatures. Defendant Swaney told Plaintiff that he hoped Plaintiff would "fucking freeze" there.

31. The cell had no toilet, no water fountain, and no furniture. The cell contained only a drain on the floor, which was clogged, leaving a festering pool of sewage in the cell. Because the cell did not contain a bunk bed, Plaintiff was forced to sleep on the floor, naked and soaked in sewage, with only a suicide blanket for warmth. Plaintiff spent three days in the seclusion cell with frigid temperatures.

32. Plaintiff told Defendant Nurse Creastor Henderson twice he needed a bathroom break. Defendant Henderson informed Defendant Officers Franco Ortiz and Joe Martinez that Plaintiff needed a bathroom break. Defendants Ortiz and Martinez told Plaintiff that if he needed to urinate, he would not be escorted out and should instead urinate in the clogged drain.

33. Plaintiff told Defendant Martinez that he was having chest pains and difficulty breathing due to the ammonia emanating from the standing pool of sewage in his cell. Defendant Martinez replied, "I don't care. Deal with it."

34. Plaintiff told Defendant Ortiz that he needed to see a nurse due to his pain and needed to urinate. Defendant Ortiz replied, "Dude, we ain't pulling you out so just use the drain like everyone else."

35. When Defendant Sergeant Robert Rojas made rounds to Plaintiff's cell, Plaintiff told him that he was having chest pains and needed to urinate. Defendant Rojas responded, "Use your floor drain to piss in. You can see a nurse later. You aren't dead yet, so you'll be all right." Plaintiff responded that he has not urinated in 24 hours and will not urinate in his cell in order to

avoid adding to the standing pool of sewage in his cell in which he had to sleep naked. Defendant Rojas mocked him by stating, "You must have a really big bladder." Plaintiff stated that he was not a dog. Defendant Rojas responded that dogs get treated better and stated, "You better think twice next time before you have another officer write a grievance for you on any other officer."

36. After 24 (twenty-four) hours of refusing to urinate, Plaintiff involuntarily urinated on himself, which resulted in the raw sewage soaking his feet.

37. Plaintiff's chest pain became unbearable. As a result, he started banging on his cell door to get help. Defendant Henderson finally went to his cell and said, "I heard you banging back here for about an hour." When Plaintiff asked why she did not come help Plaintiff, Defendant Henderson did not respond. Plaintiff told Defendant Henderson that the ammonia from the pool of urine was causing his chest, throat, and eyes to burn.

38. When Defendant Ortiz made rounds to Plaintiff's cell, Plaintiff again complained to him about the freezing temperatures in this cell and the fact he had to sleep in sewage. Defendant Ortiz responded, "Deal with it."

39. As a result of holding in his urine, Plaintiff developed severe bladder pain. Plaintiff told Nurse Stephanie Orr that he needed medical treatment. Nurse Orr responded that he needed to write sick-call, even though inmates in the seclusion cells did not have access to writing materials and thus could not write sick-calls. Plaintiff suffered for hours before Nurse Orr finally examined him and found that he had a distended bladder requiring catheterization.

40. Instead of treating Plaintiff for his bladder, Plaintiff was transported to another cell with nothing except a suicide blanket. When Plaintiff asked Officer Hatchet why he was in another cell, she responded that he was in the Warden Committee Special Program because, "You're either crazy or you pissed somebody off." Another Nurse told Plaintiff, "The Warden held a hearing on

7 **FIRST AMENDED COMPLAINT**

you in which it was determined that you would be placed here for 15 days minimum. You will not receive mail, clothes, hot meals, or any bedding beyond a suicide blanket. You may not discharge from here either." Plaintiff continued to experience excruciating pain from his bladder.

41. After Plaintiff filed a grievance, prison staff members began retaliating against Plaintiff by giving him days old food, not feeding him, refusing to clean his cell, calling him a "bitch" and "retard," removing pages from letters he wrote to his attorneys, and assaulting him with a metal bar.

42. Plaintiff continued to complain about his mistreatment. Defendant Rojas told Plaintiff, "Look here you piece of shit, I don't know how many times I have to tell you this but this is my unit and what I say goes." After Plaintiff told Defendant Rojas he would write to Defendant Warden Robert Stevens, he responded, "Stevens is on my side. Nobody is going to listen to a psych patient, so you better drop this legal shit and mind your P's and Q's. I've got eyes and ears everywhere from the mail room to the O.I.G.'s offices.

43. As a result of the mistreatment Plaintiff experienced, Plaintiff continues to suffer permanent physical and psychological injuries. Plaintiff has bladder and urinary incontinence, which causes involuntary urination and urethra spasms. Plaintiff has severe pain from urination and ejaculation. Plaintiff continues to be refused proper medical treatment.

### FIRST CAUSE OF ACTION
Unconstitutional Conditions of Confinement in
Violation of the Eight Amendment to the U.S. Constitution
42 U.S.C. § 1983
*Plaintiff against Defendants TDCJ, Warden Stevens, Riojas,
Cortez, Hunter, Davidson, Swaney, Martinez, and Henderson*

44. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

45. The Eight Amendment guarantees incarcerated persons the right to necessary and adequate medical care, and to be free from cruel and unusual punishment. *See* U.S. Const., amend. VIII. As part of that right, the government cannot subject incarcerated persons to a substantial risk of serious harm to their health and safety. *See, e.g., Farmer v. Brennan, 511* U.S. 825, 828 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

46. Mr. Taylor was forced to stay in two unconstitutionally filthy cells for six days. On September 6, 2013, Mr. Taylor was forced to stay naked in a cell that was covered entirely in massive amounts of human feces. He was unable to eat or drink anything for four days. All defendants listed were explicitly aware of the conditions but did not do anything to alleviate the horrific conditions. On September 11, 2013, Mr. Taylor was then moved to a seclusion cell without a toilet, water fountain, or bunk, which was also covered in human waste due to a clogged drain on the floor.

47. The Eight Amendment mandates that prison officials may not deprive prisoners of the "basic elements of hygiene" or the "minimal civilized measure of life's necessities." *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999). "[F]ilthy, unsanitary" cells can violate the Eighth Amendment. *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Here, Plaintiff was subjected to two cells covered in massive amounts of human feces and waste that were completely intolerable.

48. Defendants were deliberately indifferent to the serious bodily harm that was inflicted upon the Plaintiff by the unsanitary cells. Plaintiff specifically and explicitly complained to all listed defendants about the conditions in his cells and the degree to which his health was being put at risk and was actually harmed. Defendants nevertheless forced Plaintiff to sleep naked

on a urine-soaked floor. Defendants did nothing to remedy the conditions of the cells in which Plaintiff was forced to live.

49. Defendants acted under color of law and with malice or actual intent to cause injury in their official functions.

50. Plaintiff's requests for relief are set forth below.

## SECOND CAUSE OF ACTION
Deliberate Indifference to Plaintiff's Health and Safety in
Violation of the Eight Amendment to the U.S. Constitution
42 U.S.C. § 1983
*Plaintiff against Defendants TDCJ, Warden Stevens, Riojas, Martinez, Ortiz, and Henderson*

51. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

52. The Eight Amendment guarantees incarcerated persons the right to necessary and adequate medical care, and to be free from cruel and unusual punishment. *See* U.S. Const., amend. VIII. As part of that right, the government cannot subject incarcerated persons to a substantial risk of serious harm to their health and safety. *See, e.g., Farmer v. Brennan, 511* U.S. 825, 828 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

53. All listed defendants refused to escort Plaintiff to the toilet for a twenty-four hour period on or around September 12, 2013. Riojas, Ortiz, and Martinez explicitly told Plaintiff to urinate into the clogged drain on the floor, which he would then need to sleep naked in that night. Plaintiff held his urine for twenty-four hours before involuntarily urinating on himself. As a result to the harm to his bladder, Plaintiff later had to be treated for a distended bladder and was catharized.

54. The Eighth Amendment has been held to require that prison officials provide a "minimally sanitary way to relieve themselves" and that a deprivation of that right for a time

significantly less than twenty-four hours "constitute[d] a deprivation of basic elements of hygiene" in violation of the Eighth Amendment. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). Here, Plaintiff was forced to choose between enduring the immense pain of holding his bladder for twenty-four hours or urinate, as instructed by Defendants, on the same sewage-covered floor he was forced to sleep on that night. As a result of holding in his urine for so long, his bladder became distended, and he had to be catheterized.

55. Defendants explicitly knew that Plaintiff was facing this grisly problem and refused to remedy the situation in any way. Defendants were on notice that refusing to provide Plaintiff a minimally hygienic opportunity to relieve himself would constitute a violation of the Eighth Amendment under *Palmer*.

56. Defendants acted under color of law and with malice or actual intent to cause injury in their official functions.

57. Plaintiff's requests for relief are set forth below.

### THIRD CAUSE OF ACTION
Unconstitutional Policy in
Violation of the Eight Amendment to the U.S. Constitution
42 U.S.C. § 1983
*Plaintiff against TDCJ and Warden Stevens*

58. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

59. The Eight Amendment guarantees incarcerated persons the right to necessary and adequate medical care, and to be free from cruel and unusual punishment. *See* U.S. Const., amend. VIII. As part of that right, the government cannot subject incarcerated persons to a substantial risk of serious harm to their health and safety. *See, e.g., Farmer v. Brennan, 511* U.S. 825, 828 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

60. "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)

61. Defendants had a policy and/or practice of maintaining and utilizing cells that were unconstitutionally dirty or inhospitable as a degree of punishment. This policy was evidenced by the prison officials' responses to Plaintiff's complaints – telling him when he complained that he was "going to have a long weekend" and "[d]ude, this is [M]ontford, there is shit in all these cells from years of psych patients."

62. The policy delineated above was actually known, constructively known, and/or ratified by Defendant policymakers and was promulgated with deliberate indifference to Plaintiff's rights under the Unites States Constitution. The known and obvious consequence of the policy delineated above was that prisoners like Plaintiff would be subject to inhumane conditions of imprisonment that posed serious risks to their health.

63. As such, the policy above was the moving force behind Plaintiff's constitutional deprivations and injuries, causing the injuries described.

64. Defendant subjected Plaintiff to such deprivations by acting with malice or with actual intent to cause injury in the performance of their official functions.

65. Plaintiff's requests for relief are set forth below.

## FOURTH CAUSE OF ACTION
Inadequate Training
Violation of the Eight Amendment to the U.S. Constitution
42 U.S.C. § 1983
*Plaintiff against Warden Stevens and TDCJ*

66. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

67. The Eight Amendment guarantees incarcerated persons the right to necessary and adequate medical care, and to be free from cruel and unusual punishment. *See* U.S. Const., amend. VIII. As part of that right, the government cannot subject incarcerated persons to a substantial risk of serious harm to their health and safety. *See, e.g., Farmer v. Brennan, 511* U.S. 825, 828 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

68. Defendants are also liable because: (1) their training procedures related to maintaining minimally safe and hygienic facilities for the prison population as well as to take seriously medical needs of the prison population are inadequate. This is evidenced by the prison employees deliberate indifference to obviously inhumane living conditions and systemic refusal to take reasonable steps to ameliorate obvious dangers to Plaintiff, including confining him in a cell covered in human feces, refusing to let him use a restroom, causing his bladder to become distended, refusing to treat his distended bladder, and forcing him to sleep in human urine and feces. (2) Defendants' failure to adopt adequate policies and/or failure to sufficiently train subordinates and employees on such policies constitutes deliberate indifference to the constitutional rights of the Plaintiff. And (3) the inadequate training directly caused the Plaintiff's damages.

69. Plaintiff's requests for relief are set forth below.

## JURY DEMAND

70. Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A. Enter a declaratory judgment that Defendants' policies and practices violate the Eighth Amendment right against cruel and unusual punishment with respect to the Plaintiff;

B. Awarding all damages which Plaintiff has sustained as a result of Defendants' conduct, including medical bills emotional distress, and anguish;

C. Awarding Plaintiff reasonable and necessary attorneys' fees and expenses which Plaintiff has incurred and will continue to incur during all trial and appellate court proceedings pursuant to 42 U.S.C. § 1988;

D. That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

E. Awarding Plaintiff such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Plaintiff also seeks injunctive relief, including, but not limited to:

A. Supervisory discipline up to and including termination for any employee or agent of the Texas Department of Criminal Justice or any other Defendant who engages in such deliberate indifference to prisoner health and safety;

B. Ensure the cleaning and maintenance of humane conditions in cells in the John T. Montford Unit of the Texas Department of Criminal Justice;

C. Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled and may prevent future Constitutional violations by Defendants.

Dated: March 15, 2021					Respectfully submitted,

							*/s/ David W. Henderson*
							David W. Henderson
							Texas State Bar No. 24032292
							dhenderson@equalrights.law
							Jay D. Ellwanger
							Texas State Bar No. 24036522
							jellwanger@equalrights.law
							**ELLWANGER LAW LLLP**
							400 S. Zang Blvd. Ste. 1015
							Dallas, TX 75208
							Telephone: (469) 998-6775
							Facsimile: (469) 998-6775

## CERTIFICATE OF SERVICE

    I hereby certify that on March 15, 2021, a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's ECF system.

							*/s/ David W. Henderson*
							David W. Henderson